836 A.2d 802

MOHAMED A. HELMY, PLAINTIFF–APPELLANT, v. CITY OF JER-SEY CITY, JERSEY CITY POLICE DEPARTMENT, POLICE OFFICER GARY MOFFIT, POLICE OFFICER STEVEN COL-LIER, AND POLICE OFFICER MARK PRYOR, DEFENDANTS-RESPONDENTS, AND POLICE OFFICER JANE DOE, (A FICTI-TIOUS NAME FOR AN UNIDENTIFIED PERSON), AND PO-LICE OFFICER JOHN DOE, (A FICTITIOUS NAME FOR AN UNIDENTIFIED PERSON), DEFENDANTS.

Argued November 3, 2003—Decided December 15, 2003.

*Robert Francis Gold,* argued the cause for appellant (*Gold, Albanese, Barletti & Velazquez,* attorneys; *Radames Velazquez, Jr.,* on the brief).

*Kathleen A. Walrod,* Assistant Corporation Counsel, argued the cause for respondents (*Alexander W. Booth, Jr.,* Jersey City Corporation Counsel, attorney; *Nora L. Kallen,* Assistant Corporation Counsel, on the letter brief).

Justice LONG delivered the opinion of the Court.

A jury returned a verdict in favor of plaintiff Mohamed Helmy in connection with his claim for malicious prosecution against defendants, City of Jersey City, Jersey City Police Department and certain police officers. The trial court granted judgment notwithstanding the verdict (JNOV) and the Appellate Division affirmed. The gravamen of both opinions is that a disconnection between the jury's finding regarding Helmy's false arrest claim coupled with a directed verdict in favor of defendants on that count rendered the malicious prosecution verdict inconsistent and therefore invalid. We granted Helmy's petition for certification, *Helmy v. City of Jersey City,* 176 *N.J.* 278, 822 *A.*2d 608 (2003), and now reverse.

I

The matter arose out of an incident on December 12, 1997, when Helmy, employed as a delivery person for a restaurant in Jersey

City, was pulled over by Officers Steven Collier and Gary Moffit for a moving traffic violation.[1] Helmy and Collier knew each other from a prior encounter. In fact, the 1997 stop took place at the same location at which Collier had pulled Helmy over two years earlier. During that earlier incident in 1995, about which Helmy and the officer had radically different recollections (Helmy claiming he was pulled out of the car and assaulted and Collier alleging that Helmy was the aggressor), Helmy was arrested and charged with acts of delinquency, which if committed by an adult would constitute the crimes of aggravated assault upon a police officer, *N.J.S.A.* 2C:12–1(b)(5)(a); terroristic threats, *N.J.S.A.* 2C:12–3; possession of an unlawful weapon, *N.J.S.A.* 2C:39–5; and resisting arrest, *N.J.S.A.* 2C:29–2(a). Helmy was tried and acquitted of all charges except resisting arrest.

The parties' accounts of what occurred during the 1997 stop also vary greatly. Helmy contends that when Officer Collier stopped him, he never asked for his credentials or requested that he step out of the vehicle but physically accosted him by opening the driver's side door, grabbing his jacket, and asking "where's your lawyer now?" Helmy testified that he fled out of fear predicated on his prior interaction with Officer Collier. According to Helmy, the officers chased him and he pulled over when he saw another police vehicle. He felt it was safe to stop because he "knew that not all officers are like that." Helmy stated that when he stepped out of his vehicle, Officers Collier and Moffit had their weapons drawn and pointed at him and that he "got down" immediately as instructed. He testified that the officers then began beating and kicking him before and after he was handcuffed. Helmy categorically denied that he ever assaulted or threatened the officers, placed them at risk or resisted them except insofar as he drove away in fear.

He was taken to the precinct, where, among other things, Helmy claims he was physically assaulted before other officers,

---

[1] No traffic summonses were ever issued regarding that alleged violation.

locked in a closet, taunted about his ethnicity, searched, forced to remove his clothing while handcuffed to a bench, generally ridiculed, and denied medical attention. Helmy was incarcerated for three days before he was able to make bail. He testified to the injuries he sustained from the beatings, the stress of the incarceration and the strip searches, the interruption of his college studies, the psychological distress caused by his indictment and subsequent criminal trial, and the ongoing emotional effects of the foregoing.

Officers Collier and Moffit offered a vastly different version of events. In addition to denying any abuse of Helmy, Officer Collier testified that when he approached the vehicle and asked for Helmy's credentials, he did not recognize him. According to the officers, Helmy first produced inadequate identification, *i.e.,* "the registration and insurance for another vehicle," then refused to turn over any other documentation, including his driver's license, becoming increasingly hostile by the minute.[2] Collier testified that he opened the driver's side door wider for his safety when Helmy bent down with his hands out of view and drove off, striking both officers with his car.

The officers pursued Helmy whose automobile became stuck in traffic. When Collier and Moffit caught up with him, they approached his vehicle with weapons drawn but pointed at the ground. The officers stated that they holstered their guns, and Helmy "charged" Officer Collier, knocking him to the ground. Helmy eventually was subdued, handcuffed and transported to police headquarters with the assistance of Officer Mark Prior, who arrived on the scene during the scuffle. Officer Collier denied assaulting Helmy, calling him any names, or placing him in a closet. He testified that Helmy was processed according to procedure without event.

---

[2] Helmy later produced all relevant personal identification and driving credentials.

Officer Prior testified that he responded to Officer Collier's call for back-up. He stated that he arrived at the scene of the second stop to find Helmy on the ground struggling with Officers Collier and Moffit. The remainder of Officer Prior's testimony mirrored that of Officers Collier and Moffit.

Helmy was indicted on four counts of third degree aggravated assault against Officers Collier and Moffit by attempting to cause them "bodily injury" in violation of *N.J.S.A.* 2C:12–1b(5)(a); two counts of second degree eluding Officers Collier and Moffit while "creating a risk of death or injury" in violation of *N.J.S.A.* 2C:29–2b; one count of third degree resisting arrest "while using or threatening to use physical force or violence" against the officers in violation of *N.J.S.A.* 2C:29–2a; and one count of third degree terroristic threats in violation of *N.J.S.A.* 2C:12–3a. Tried to a jury, and despite acknowledging that he attempted to get away from the police, Helmy was found not guilty on all counts.

Subsequently, Helmy filed suit against defendants. Included in the complaint were federal civil rights claims, state constitutional claims, state statutory claims, and common-law claims. Reduced to their essence, the claims asserted false arrest, assault and battery, intentional infliction of emotional distress, malicious prosecution, negligent training and supervision, use of excessive force, and conspiracy.

At the close of the evidence, the court granted defendants' motion for a directed verdict on the counts of intentional infliction of emotional distress, unlawful search, assault and battery, and all claims for failure to supervise and train defendant officers. The court denied the motion with respect to the excessive force and conspiracy claims against the officers, the malicious prosecution claim, and the false arrest claim.

The parties agreed that the court would instruct the jury on all claims except false arrest. With regard to that claim, a special interrogatory addressing probable cause was to be submitted to the jury in conjunction with the verdict sheet on the remaining counts. The interrogatory read as follows: "Do you find that

Officer Steven Collier requested the documents for the van that [Helmy] was driving when he was initially stopped at 201 St. Paul's Avenue?" Apparently, the parties and the court assumed that the answer to that question would resolve whether the police had probable cause to arrest Helmy. Once the probable cause determination was made, the court was to decide whether false arrest remained a viable claim.

The trial court instructed the jury to answer the special interrogatory first and to notify the clerk when it had done so. The jury unanimously found that Officer Collier asked defendant for "the documents for the van" during the first stop. As the jury continued to deliberate, the trial court considered defendants' motion for a directed verdict on the claim of false arrest, based upon a finding of probable cause. The court granted the motion, reasoning as follows:

In determining probable cause you determine it from the standpoint of what a [ ] reasonable officer would believe under the circumstances, not what [Helmy] would believe or what [Helmy] was thinking at that time. Under those circumstances where a driver was stopped for a traffic violation the driver refused or did not produce paperwork for the car. Police [o]fficer had a reasonable—it would be reasonable for the police officer to ask the driver to step out of the car and when the driver took off under those circumstances it was reasonable to believe that he was [e]luding the police and to place him under arrest under those circumstances. So I believe that the—based on those facts [Helmy] has not shown [ ] a lack of probable cause for the arrest, therefore, I find that there was [ ] probable cause for the arrest under those circumstances.

Helmy did not appeal any of the directed verdicts to the Appellate Division.

Thereafter, the jury returned a unanimous verdict declaring that Helmy had proved neither unreasonable use of force nor conspiracy, but that he had proved that Collier and Moffit "deprived him of his constitutional rights by maliciously prosecuting him" and awarded him $500,000 in compensatory damages.

Defendants moved for JNOV or, in the alternative, remittitur. Ultimately, the court granted Defendant's motion for JNOV:

Therefore, I find that the jury's verdict that the officers maliciously prosecuted [petitioner] was against the weight of the evidence because it requires a finding that there was an absence of probable cause and clearly the facts in this case

establish [probable] cause for the claim. Accordingly the motion for a judgment notwithstanding the verdict will be granted.

The Appellate Division affirmed.

## II

Helmy contends that the trial court and the Appellate Division applied the wrong standard in failing to accept as true all of the evidence that supported him and in failing to accord him all favorable inferences. Second, he argues that the jury was free to find that defendants lacked probable cause to prosecute the numerous serious criminal charges they lodged against him even if they had probable cause to arrest him after he fled. Defendants counter that Helmy's concession that he attempted to elude the police coupled with the grand jury indictment establish probable cause to prosecute and that the finding of probable cause to arrest rendered the malicious prosecution verdict invalid.

## III

In order to establish a claim for malicious prosecution, plaintiff must prove (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff. *Lind v. Schmid,* 67 *N.J.* 255, 262, 337 *A.*2d 365, 368 (1975); *JEM Marketing, LLC v. Cellular Telecomm. Indus. Ass'n,* 308 *N.J.Super.* 160, 172, 705 *A.*2d 798, 804 (App.Div.1998). Here, prongs one and four are not at issue because defendants concede them. In contention is whether there was probable cause to pursue legal proceedings and whether they were actuated by malice.

In analyzing those elements on the JNOV motion, the trial court was governed by the following standard: "[I]f, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced

therefrom, reasonable minds could differ, the motion must be denied...." *Estate of Roach v. TRW, Inc.,* 164 *N.J.* 598, 612, 754 *A.*2d 544, 551 (2000) (internal citations and quotation marks omitted) (alteration in original).

■ It was in applying that standard that the court went astray. Plainly, there were facts, with inferences in favor of Helmy, upon which a jury could have returned a malicious prosecution verdict. Helmy specifically denied any aggravated assault upon the officers; denied threatening or using any physical force or violence against them or creating a risk of death or injury to them; and denied having made any terroristic threats. He acknowledged leaving the initial scene of the 1997 stop, however, Helmy claimed that that action was prompted solely out of his fear of Officer Collier which was based on their prior dealings. Furthermore, Helmy denied that he presented any risk to the officers in doing so. A jury agreed, acquitting Helmy of all of those charges.

The jury's finding that Collier requested Helmy's credentials, coupled with Helmy's acknowledgment that he drove away did not affect the validity of the verdict. The most that those facts could have established was that the police had probable cause to arrest and prosecute Helmy for eluding, not that they had probable cause to level four aggravated assault charges, along with second-degree resisting arrest and terroristic threats. Indeed, if the jury believed Helmy's version, it could have concluded that the latter charges were maliciously pursued.

■ Nothing in the return of the grand jury indictment requires a contrary conclusion. Although a grand jury indictment is *prima facie* evidence of probable cause to prosecute, when the facts underlying it are disputed, the issue must be resolved by the jury. *Zalewski v. Gallagher,* 150 *N.J.Super.* 360, 367–68, 375 *A.*2d 1195, 1199 (App.Div.1977) (citations omitted); *see also Galafaro v. Kuenstler,* 53 *N.J.Super.* 379, 385, 147 *A.*2d 550, 553–54 (App.Div. 1958) (holding defendant over for grand jury action is no more than *prima facie* showing of probable cause). In this case, Helmy not only presented evidence that he was acquitted on all counts,

but recounted the underlying details of his interactions with the police both in 1995 and 1997, denying outright that he committed any of the acts for which he was indicted (except driving away from the first encounter). If the jury believed his version it was fully empowered to render the verdict at issue here.

█ We thus reverse the judgment of the Appellate Division and remand the case to the trial court for reinstatement of the verdict. Because the trial court did not reach the remittitur motion as a result of the entry of judgment in defendant's favor, that issue remains unresolved and should be taken up on the remand.

## IV

The judgment of the Appellate Division is reversed. The jury award is reinstated. The matter is remanded to the trial court for resolution of the remittitur motion.

*For reversing and remanding*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN, and WALLACE—7.

*Opposed*—None.