**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2479-15T1

JOHN FALAT, JR., MICHAEL RUSSO
and DEBORAH TROUT,

      Plaintiffs-Appellants,

v.

THE COUNTY OF HUNTERDON, THE OFFICE
OF THE HUNTERDON COUNTY PROSECUTOR;
GEORGE MELICK, individually and
in his representative capacity
as a Hunterdon County Freeholder
and agent of the County of Hunterdon;
WILLIAM MENNEN, individually and
in his representative capacity
as a Hunterdon County Freeholder
and agent of the County of Hunterdon;
RONALD SWOREN, individually and
in his representative capacity
as a Hunterdon County Freeholder
and agent of the County of Hunterdon;
MATTHEW HOLT, individually and
in his representative capacity
as a Hunterdon County Freeholder
and agent of the County of Hunterdon;
ERIK PETERSON, individually and
in his representative capacity
as a Hunterdon County Freeholder
and agent of the County of Hunterdon;
ROBERT WALTON, individually and
in his representative capacity
as a Hunterdon County Freeholder
and agent of the County of Hunterdon;
GAETANO DESAPIO, individually and

in his representative capacity
as a Hunterdon County Counsel
and agent of the County of Hunterdon;
KENNETH ROWE, individually and
in his representative capacity
as agent of the Office of the Hunterdon
County Prosecutor; EDMUND DEFILLIPIS,
individually and in his representative
capacity as agent of the Office of
Hunterdon County Prosecutor; CYNTHIA
YARD, individually and in her
representative capacity as Hunterdon
County Administrator and agent of
the County of Hunterdon,

       Defendants-Respondents,

and

J. PATRICK BARNES, individually and
in his representative capacity as the
Hunterdon County Prosecutor;
BENNETT BARLYN, individually and in
his representative capacity as agent
of the Office of the Hunterdon County
Prosecutor; WILLIAM MCGOVERN,
individually and in his representative
capacity as agent of the Office of
the Hunterdon County Prosecutor; and
DONNA SIMON, in her individual and
representative capacities,

       Defendants.

_____

Argued May 21, 2018 — Decided July 25, 2018

Before Judges Messano, Accurso, and O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Sussex County, Docket No.
L-0188-15.

Nina Rossi argued the cause for appellants
(Law Offices of William J. Courtney, LLC,

attorneys; William J. Courtney, of counsel; Nina Rossi, on the briefs).

Thomas B. Hanrahan argued the cause for respondents County of Hunterdon, George Melick, William Mennen, Ronald Sworen, Matthew Holt, Erik Peterson, Robert Walton and Cynthia Yard (Hanrahan Pack, LLC, attorneys; Thomas B. Hanrahan, of counsel; Nicholas P. Milewski, on the brief).

Walter F. Kawalec, III, argued the cause for respondent Gaetano DeSapio, Esq. (Marshall Dennehey Warner Coleman & Goggin, attorneys; Howard B. Mankoff and Walter F. Kawalec, III, on the brief).

Eric L. Harrison argued the cause for respondents Kenneth Rowe and Edmund DeFillipis (Methfessel & Werbel, attorneys; Eric L. Harrison, of counsel and on the brief; Jennifer M. Herrmann, on the brief).

PER CURIAM

In November 2007, plaintiff Deborah Trout was elected Sheriff of Hunterdon County (the County), and she served in that office from January 1, 2008, until December 31, 2010. At the beginning of her term, Trout appointed plaintiff Michael Russo as Undersheriff and plaintiff John Falat, Jr., as an investigator in the Hunterdon County Sheriff's Office (HCSO). The HCSO previously employed both Trout and Russo, and both had previously filed and

settled litigation against the County.[1]

In 2010, a Hunterdon County grand jury indicted plaintiffs for official misconduct and other crimes and issued a presentment regarding operations at the HCSO. By the time the indictments and presentment were released publicly in May 2010, the Office of the Attorney General had superseded the Hunterdon County Prosecutor's Office (HCPO), and a deputy attorney general (DAG) succeeded County Prosecutor J. Patrick Barnes and was serving as acting prosecutor. In August, a different DAG who was handling the prosecution of the indictments moved to dismiss them without prejudice.

In her August 23, 2010 letter to the criminal trial judge, the DAG stated the State's motion was "based upon legal and factual deficiencies in the indictments," and "errors in the presentation of these matters to the grand jury [that] have resulted in defective indictments." The DAG also stated "incorrect instructions . . . tainted the entire deliberative process." Fairly read, the letter questioned both the sufficiency of the facts adduced before the grand jury and the legal theory supporting

---

[1] Because these appeals are from orders dismissing plaintiffs' complaint pursuant to Rule 4:6-2, and denying their motion for leave to file a second amended complaint, plaintiffs' version of the facts is treated "as uncontradicted[] accord[ed] . . . all legitimate inferences" and "accept[ed] . . . as fact" for purposes of our review. Banco Popular N. Am. v. Gandi, 184 N.J. 161, 166 (2005).

A-2479-15T1

the charged crimes. The judge entered an order dismissing the indictments without prejudice the same day.

On August 2, 2012, plaintiffs filed a complaint naming the County and a number of public officials as defendants, including freeholders George Melick, William Mennen, Ronald Sworen, Matthew Holt, Erik Peterson, Robert Walton and County Administrator Cynthia Yard (collectively, the County Defendants), County Counsel Gaetano DeSapio, and Kenneth Rowe and Edmund DeFillipis, investigators with the HCPO (collectively, the HCPO Defendants).[2] The complaint was removed to federal court, where Judge Stanley R. Chesler granted defendants' motions to dismiss.

In his written opinion, Judge Chesler dismissed with prejudice several of the complaint's twenty counts. Judge Chesler dismissed the remaining counts without prejudice, noting the pleading "largely fail[ed] to connect . . . factual allegations to the specific counts . . . ." He permitted plaintiffs to file an amended complaint "that clearly spells out which individual plaintiffs are making what legal claims against whom and set forth specific factual allegations to support each of those claims."

Plaintiffs filed an amended complaint in federal court, and defendants again moved to dismiss. Judge Faith S. Hochberg's

---

[2] The complaint included other defendants who were not named in future iterations of the pleading or were otherwise dismissed.

November 21, 2014 order dismissed plaintiffs' "federal claims" with prejudice and remanded "all remaining state law causes of action." In her written opinion that accompanied the order, Judge Hochberg noted that despite Judge Chesler's earlier order, "[p]laintiffs persist[ed] in reasserting some of the[] already-dismissed claims." Judge Hochberg refused to "revive these causes of action," and summarized what remained extant for her consideration:

> [T]he remaining counts include: (a) free speech claims under the First Amendment; (b) a conspiracy claim asserted pursuant to 42 U.S.C. § 1985(3); (c) a malicious prosecution claim under the Fourth Amendment against the individual Defendants; and (d) state law claims under the New Jersey Constitution, a state law malicious prosecution claim, and a claim under [the New Jersey Law Against Discrimination (NJLAD)], hostile work environment, retaliation, and constructive discharge.

Judge Hochberg dismissed plaintiffs' First Amendment claims as untimely, specifically rejecting their assertion that the "continuing violation[s]" doctrine equitably tolled the two-year statute of limitations, and concluded any specific allegations within the statute of limitations were insufficiently pled or otherwise insufficient as a matter of law. The judge dismissed plaintiffs' 42 U.S.C. § 1985 conspiracy claims, finding there were no allegations of "class-based, invidiously discriminatory

animus," quoting <u>Faylor v. Szupper</u>, 411 F. App'x 525, 530 (3d Cir. 2011), or "an illegal agreement" among defendants.   Turning to plaintiffs' malicious prosecution claim, Judge Hochberg determined the complaint failed to allege "a lack of probable cause sufficient to overcome the effect of the . . . indictment . . . ," or that defendants "initiated the criminal proceeding."   The judge declined to exercise supplemental jurisdiction over plaintiffs' state law claims and remanded them to the Law Division.

Defendants then renewed their motions to dismiss the amended complaint pursuant to <u>Rule</u> 4:6-2(e).   In addition to filing opposition, plaintiffs cross-moved seeking leave to file a proposed 236-page second amended complaint (second amended complaint).   The second amended complaint expanded some factual allegations, primarily by repeating the same facts in each count of the complaint, and abandoned counts in the prior complaint alleging federal claims and Trout's claim for "constructive discharge."  After oral arguments, the entry of interim orders, a motion for reconsideration and further arguments, the Law Division judge entered a series of orders on January 7, 2016 that granted defendants' motions to dismiss the complaint with prejudice and

denied plaintiffs' motion for reconsideration and cross-motion to file the second amended complaint. This appeal followed.[3]

## I.

## A.

"Our review of the trial court's dismissal order[s] in this context is de novo." Flinn v. Amboy Nat'l Bank, 436 N.J. Super. 274, 287 (App. Div. 2014).[4] Motions to dismiss for failure to state a claim "are judged by determining 'whether a cause of action is "suggested" by the facts.'" Nostrame v. Santiago, 213 N.J. 109, 127 (2013) (quoting Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746 (1989)). Although we must review plaintiffs' complaint "in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim," ibid. (quoting Printing Mart, 116 N.J. at 746), "[a] pleading should be dismissed if it states no basis for relief and discovery would not provide one." Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 113 (App. Div. 2011). "[T]he 'inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the

---

[3] Plaintiffs' notice of appeal is limited to the January 7, 2016 orders.

[4] As a result, plaintiffs' arguments about the motion judge's obvious confusion regarding the various complaints is irrelevant.

complaint.'" Nostrame, 213 N.J. at 127 (quoting Printing Mart, 116 N.J. at 746).

"A motion to dismiss pursuant to Rule 4:6-2(e) ordinarily is granted without prejudice." Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 116 (App. Div. 2009). However, when the complaint fails to set forth "[t]he traditional articulation" of the elements of a cause of action, no additional facts could be pled, or further proceedings will amount only to "a mere fishing expedition," dismissal with prejudice is entirely appropriate. Nostrame, 213 N.J. at 128.

### B.

"[T]he granting of a motion to file an amended complaint always rests in the court's sound discretion." Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 501 (2006) (quoting Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 457 (1998)). "[T]h[e] Court has construed Rule 4:9-1 to 'require[] that motions for leave to amend be granted liberally,' even if the ultimate merits of the amendment are uncertain." Prime Accounting Dept. v. Twp. of Carney's Point, 212 N.J. 493, 511 (2013) (quoting Kernan, 154 N.J. at 456. "One exception to that rule arises when the amendment would be 'futile,' because 'the amended claim will nonetheless fail and, hence, allowing the amendment would be a useless endeavor.'" Ibid. (quoting Notte, 185 N.J. at 501).

II.

Applying these standards to plaintiffs' amended complaint, we affirm its dismissal with prejudice. We also affirm the order denying plaintiffs' motion for reconsideration and leave to file the second amended complaint.

A.

Trout and Russo alleged the County violated the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. As we can best discern from the amended complaint, Trout alleged discrimination and disparate treatment based upon gender (Count One), and both plaintiffs alleged the County created a hostile work environment (Count Two) and retaliated against them for prior protected activity — the two previously settled lawsuits (Count Six). In Count Eight, plaintiffs alleged Yard and DeSapio aided and abetted the County in its discrimination and retaliation, and in Count Nine, plaintiffs alleged the County was vicariously liable under the doctrine of respondeat superior for actions of the individual County Defendants.[5]

---

[5] In Count Seven, Trout alleged constructive discharge. As already noted, the proposed second amended complaint abandoned this claim, and Trout has not made any argument addressing the dismissal of this cause of action in her brief. An argument not briefed is deemed waived. Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008).

Claims brought under the LAD are subject to a two-year statute of limitations. Vitale v. Schering-Plough Corp., 231 N.J. 234, 249 (2017) (citing Montells v. Haynes, 133 N.J. 282, 291-92 (1993)). "Discriminatory termination and other similar abrupt, singular adverse employment actions that are attributable to invidious discrimination . . . generally are immediately known injuries, whose two year statute of limitations period commences on the day they occur." Alexander v. Seton Hall Univ., 204 N.J. 219, 228 (2010).

"Whether a cause of action is barred by a statute of limitations is a question of law . . . reviewed de novo." Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (App. Div. 2016) (citing Estate of Hainthaler v. Zurich Commercial Ins., 387 N.J. Super. 318, 325 (App. Div. 2006)). Plaintiffs filed their initial complaint on August 2, 2012. Therefore, any discrete discriminatory acts allegedly committed by defendants prior to August 2, 2010, were time-barred, and plaintiffs do not contend otherwise.

Plaintiffs seek the safe harbor of the continuing violation doctrine, "a judicially created . . . equitable exception" to the LAD statute of limitations. Bolinger v. Bell Atl., 330 N.J. Super. 300, 306 (App. Div. 2000). The continuing violation doctrine does not allow the aggregation of individually actionable acts in order

to avoid the statute of limitations. Roa v. Roa, 200 N.J. 555, 567 (2010).

If, however, a plaintiff alleges "a pattern or series of acts, any one of which may not be actionable as a discrete act, but when viewed cumulatively constitute a hostile work environment," the cause of action accrues "on the date on which the last act occurred." Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 21 (2002) (citation omitted). As the Court explained:

> [T]he continuing violation theory was developed to allow for the aggregation of acts, each of which, in itself, might not have alerted the employee of the existence of a claim, but which together show a pattern of discrimination. In those circumstances, the last act is said to sweep in otherwise untimely prior non-discrete acts.
>
> What the doctrine does not permit is the aggregation of discrete discriminatory acts for the purpose of reviving an untimely act of discrimination that the victim knew or should have known was actionable. Each such discrete discriminatory act starts a new clock for filing charges alleging that act.
>
> [Roa, 200 N.J. at 569 (citation omitted).]

In the amended complaint, plaintiffs' specific post-August 2, 2010 factual allegations are: Melick sent a letter to then Governor Chris Christie and other public officials questioning why the Attorney General had taken over the prosecution of the indictment; Mennen stated at a regular meeting of the freeholder

12

board in September 2010 that although the indictment was dismissed, the board should "administratively review" the allegations; DeSapio and the County Defendants disclosed unspecified "personal material relating to insurance programs . . . and [plaintiffs'] personal and family circumstance" without going into executive session; and on unspecified dates during the "term of Trout," the County Defendants refused to permit access to the "Sheriff's Trust Fund," interfered with her hiring decisions, would not permit other county departments to perform work at HCSO offices without Yard's approval and "scrutinized, questioned and delayed" contracts with the HCSO. Plaintiffs alleged this amounted to disparate treatment in violation of the LAD.

Added to this list in the second amended complaint was an allegation that in September 2010 the freeholders sought access to the criminal investigative file as part of their decision to administratively review the now dismissed criminal charges, and that they discussed plaintiffs' unemployment benefits at a July 2011 public meeting later reported in a local newspaper.

However, there were no factual allegations connecting these otherwise gender-neutral actions to Trout's LAD claims. Indeed, the only direct allegation in either complaint regarding Trout's gender was that upon her election in 2007, Melick referred to her as a "b****." Not only were the allegations insufficient to

overcome the two-year statute of limitations via the continuous violation theory, they were insufficient to plead a cause of action under the LAD in the first instance. See Aquas v. State, 220 N.J. 494, 509 (2015) (emphasis added) (holding in a gender-based LAD hostile work environment case, a female plaintiff must demonstrate that the complained-of conduct "(1) would not have occurred but for [her] gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive"). Russo did not attempt to allege an independent gender-based LAD claim, nor could he. Ibid. We affirm the dismissal with prejudice of Trout's and Russo's LAD claims in Counts One and Two of the amended complaint.[6]

---

[6] It is unnecessary to address in detail an alternative argument advanced by the County Defendants that supported dismissal of Trout's LAD claim, specifically that Trout was not an employee of the County, and, therefore, she could not assert a viable LAD claim against the County. See N.J.S.A. 10:5-12(a) (prohibiting discriminatory practices by an "employer"); Thomas v. County of Camden, 386 N.J. Super. 582, 594 (App. Div. 2006) (citation omitted) ("Clearly, the LAD was intended to prohibit discrimination in the context of an employer/employee relationship.").

In Communications Workers of America v. Treffinger, 291 N.J. Super. 336, 350-51 (Law Div. 1996), the court described the statutory powers provided by the Legislature to the Sheriff, a constitutional officer, regarding personnel decisions, and concluded, "the Sheriff, not the County, is the exclusive employer

(footnote continued next page)

Read in the most indulgent light, the allegations in Count Six of the amended complaint were that Trout's prior lawsuit, making claims under the LAD and the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, and Russo's prior CEPA suit brought resulted in retaliatory conduct by the County Defendants' against both. See N.J.S.A. 10:5-12(d); N.J.S.A. 34:19-3.

The LAD recognizes a cause of action for retaliation. N.J.S.A. 10:5-12(d). "When the claim arises from alleged retaliation, the elements of the cause of action are that the employee 'engaged in a protected activity known to the [employer,]' the employee was 'subjected to an adverse employment decision[,]' and there is a causal link between the protected activity and the adverse employment action." Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013) (quoting Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252, 274 (App. Div. 1996)); see also Royster v. N.J. State Police, 439 N.J. Super. 554, 576 (App. Div. 2015) (defining CEPA retaliation claim as having the same elements).

---

(footnote continued)
and/or hiring authority for his office." Id. at 351. Moreover, the traditional analyses utilized to consider whether an employer-employee relationship exists between the Sheriff and the County weigh heavily in favor of concluding the County is not the employer of the Sheriff. See, e.g., Thomas, 386 N.J. Super. at 595-99.

The amended complaint and second amended complaint alleged that after Trout's 2007 election, the County Defendants' and DeSapio's words and conduct created a hostile work environment equivalent to adverse employment action for purposes of the LAD's anti-retaliation provision. The alleged "protected activity" was a lawsuit Trout filed nearly a decade earlier, in 1998. In Young v. Hobart West Group, 385 N.J. Super. 448, 467 (App. Div. 2005), we held that in an LAD retaliatory discharge case where timing alone was not "unusually suggestive," a plaintiff must set forth other evidence to establish causality. As to Trout, both the amended and second amended complaint lack facts alleging any nexus between the 1998 lawsuit and subsequent conduct, save a single comment attributed to Melick made in 2007 that the County Defendants would "not . . . make it easy" for Trout because "[t]he b**** sued us." More importantly, as already noted, the post-August 2010 conduct alleged in both the amended and second amended complaint independently failed to establish incidents of LAD retaliation and are insufficient to qualify as retaliatory conduct under the continuing violation doctrine.

Russo's prior lawsuit against the County was filed in 1995, twelve years before Trout's election and seventeen years before he filed this lawsuit. He fails to cite any case law supporting the proposition that the filing of a prior CEPA lawsuit is

"protected activity" that can trigger another CEPA violation.[7] We need not address this point because the amended complaint and second amended complaint are devoid of allegations the County Defendants took adverse employment action against Russo personally.

Moreover, CEPA contains a one-year statute of limitations. N.J.S.A. 34:19-5. Allegations of post-August 2, 2011 retaliatory conduct taken against Russo personally are non-existent in both pleadings. As a result, the retaliation claims of both Trout and Russo in Count Six of the amended complaint were properly dismissed and are not salvaged by the allegations in the second amended complaint.

### B.

Plaintiffs Trout and Russo argue that although Judge Hochberg dismissed with prejudice their federal causes of action under the United States Constitution, § 1983 and § 1985, the Law Division judge erred by dismissing Count Four (Conspiracy in Violation of the New Jersey Constitution), and Count Five (Violation of the New Jersey Constitution and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2 (the NJCRA)), of the amended complaint. As we can

---

[7] We are aware of no reported case that addresses the issue, although some of our unpublished decisions have reached differing results.

best discern, plaintiffs contend that "[a]lthough the NJCRA may, at times, be interpreted as analogous to . . . [§] 1983, that is certainly not always the case."  Plaintiffs argue the amended complaint and second amended complaint alleged violations of New Jersey's Constitution and statutes, claims specifically preserved and remanded by Judge Hochberg.

"[O]ur State Civil Rights Act is modeled off of the analogous Federal Civil Rights Act, 42 U.S.C. § 1983, and is intended to provide what Section 1983 does not: a remedy for the violation of substantive rights found in our State Constitution and laws." Harz v. Borough of Spring Lake, ___ N.J. ___, ___ (2018) (slip op. at 17) (quoting Tumpson v. Farina, 218 N.J. 450, 474 (2014)).  The NJCRA "is a means of vindicating substantive rights and is not a source of rights itself."  Gormley v. Wood-El, 218 N.J. 72, 98 (2014).  "The statute of limitations for claims under the NJCRA is two years[,]" Lapolla v. Cty. of Union, 449 N.J. Super. 288, 298 (App. Div. 2017) (citing N.J.S.A. 2A:14-2(a)), the same statute of limitations that applied to plaintiffs' federal civil rights claims.  Freeman v. State, 347 N.J. Super. 11, 21-22 (App. Div. 2002).

Plaintiffs seemingly argue without any legal support that the continuing violation theory salvages their NJCRA claims.  Notably, Judge Hochberg rejected the argument as it pertained to plaintiffs'

federal civil rights claims. In <u>Freeman</u>, we rejected claims of equitable tolling and application of the discovery rule to salvage the plaintiffs' claims of federal civil rights violations under admittedly different factual circumstances. <u>Id.</u> at 28-32.

In any event, in the absence of controlling precedent to the contrary, Trout's and Russo's NJCRA claims are limited to allegations that post-date August 2, 2010. We have already synopsized above what those allegations are. They are inadequate to state a cause of action under any of the provisions of the New Jersey Constitution, cited only parenthetically in Count Four of the amended complaint, or the NJCRA, cited in Count Five of the amended complaint.

Count Three of the second amended complaint is 119 pages long and lists the specific state statutory and constitutional provisions that defendants allegedly violated. It too is time-barred, except for conduct that occurred after August 2, 2010. The allegations in the second amended complaint of post-August 2010 conduct are inadequate to state a cause of action under the NJCRA.

Falat asserted no claim whatsoever for relief in Counts Four and Five of the amended complaint, yet he is included in Count Three of the second amended complaint. Having never been asserted

before July 2015, Falat's claims under the NJCRA are certainly time-barred.

The one exception to this limitations analysis is plaintiffs' claim for malicious prosecution, asserted under the common law (Count Eleven of the amended complaint and Count Seven in the second amended complaint), or, as to Trout and Russo, under the NJCRA (Counts Four and Five of the amended complaint and Count Three of the second amended complaint). This is so because the State dismissed the indictments against plaintiffs on August 23, 2010, i.e., within two years of the filing of plaintiffs' initial complaint.

In <u>Camiolo v. State Farm Fire and Casualty Company</u>, 334 F.3d 345, 362-63 (3d Cir. 2003) (citation omitted), the Third Circuit explained the elements of malicious prosecution for purposes of § 1983:

> [A] plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

"[F]iling criminal charges without probable cause . . . is a constitutional violation actionable under section 1983." Kirk v. Newark, 109 N.J. 173, 185 (1988).

Plaintiffs concede, however, that "[m]alicious prosecution under New Jersey law has developed through case law, [and] it is not a constitutional claim as it is under federal law." As a result, Trout's and Russo's NJCRA claims in the amended complaint were properly dismissed and could not be legally salvaged by the second amended complaint.

Plaintiffs alleged all defendants committed the common law tort of malicious prosecution (Count Eleven of the amended complaint; Count Seven of the second amended complaint). Our Supreme Court has explained:

> In order to establish a claim for malicious prosecution, plaintiff must prove (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff.
>
> [Helmy v. City of Jersey City, 178 N.J. 183, 190 (2003) (citing Lind v. Schmid, 67 N.J. 255, 262 (1975); JEM Marketing, LLC v. Cellular Telecomm. Indus. Ass'n, 308 N.J. Super. 160, 172 (App. Div. 1998)).]

"Since a suit for malicious prosecution must await a favorable termination of the criminal proceeding, the statute of limitations

does not begin until such termination." Muller Fuel Oil Co. v. Ins. Co. of N. Am., 95 N.J. Super. 564, 577 (App. Div. 1967). The dismissal of plaintiffs' indictments were favorable outcomes that did not occur until August 23, 2010, i.e., within two years of the filing of the amended complaint. The malicious prosecution count was therefore timely. We turn our attention to the other elements of the tort, the absence of any of which would be fatal to plaintiffs' claim. LoBiondo v. Schwartz, 199 N.J. 62, 90 (2009) (citations omitted).

Plaintiffs contend the amended complaint fairly sets forth a pattern of words and deeds by which the County, County Defendants and DeSapio initiated the criminal investigation resulting in the indictments. They allege that as to the HCPO defendants, Rowe was intimately involved in both the investigation and grand jury presentation, and DeFillipis assisted in arresting Falat prior to the return of the indictment.

The County and County Defendants argue the pleadings fail to allege facts sufficient to demonstrate as a matter of law that they initiated the criminal proceedings, and also contend the HCPO's independent investigation and presentation to the grand jury were "intervening and independent acts of law enforcement authorities" that "insulate" them. Seidel v. Greenberg, 108 N.J. Super. 248, 264 (Ch. Div. 1969). DeSapio contends that the

complaint only alleged he provided information as requested to the HCPO and that even if true, those allegations are insufficient as a matter of law to prove he initiated the criminal proceedings.

The HCPO defendants argue plaintiffs failed to plead sufficient facts demonstrating they initiated the criminal proceedings and acted with malice and without probable cause. They also contend plaintiffs failed to comply with the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, by providing timely notice of their claim.

In her written decision, Judge Hochberg reviewed the factual allegations in plaintiffs' amended complaint supporting their claim that the County Defendants or DeSapio "initiated" criminal proceedings that led to the indictments and concluded they were insufficient as a matter of law. We agree with her analysis.

Plaintiffs need not allege one of the County Defendants or DeSapio actually signed a criminal complaint against them, but the first element of the tort fails "when [a] defendant merely approves or silently acquiesces in the acts of another." Epperson v. Wal-Mart Stores, Inc., 373 N.J. Super. 522, 531 (App. Div. 2004). However, a plaintiff may successfully establish the first element "by proof that defendant took 'some active part in instigating or encouraging the prosecution' or 'advis[ing] or assist[ing] another person to begin the proceeding, [or by] ratif[ying] it when it is

23                                                    A-2479-15T1

begun in defendant's behalf, or [by] tak[ing] any active part in directing or aiding the conduct of the case.'" Ibid. (quoting Prosser and Keeton, The Law of Torts § 119 at 872 (5th ed., 1984)); see also Seidel, 108 N.J. Super. at 257 (the tort requires "affirmative action by way of advice, encouragement, pressure, etc., in the institution, or causing the institution, of the prosecution or in affirmatively encouraging its continuance after it has been instituted"). The defendant in the malicious prosecution case must be "the proximate and efficient cause of maliciously putting the law in motion." Seidel, 108 N.J. Super. at 258 (quoting 54 C.J.S. Malicious Prosecution § 14 at 966); see also Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 399 (2009) (noting prosecutor's "separate, independent determination of whether to submit the case to the grand jury and, if so, what witnesses would be called before it" was independent of alleged tortfeasors' conduct).

Plaintiffs do not allege the information provided by DeSapio and the County Defendants to the HCPO was false. Beyond general claims of interference with Trout's and Russo's operation of the HCSO, the amended complaint specifically alleged only that DeSapio and the County Defendants corresponded with the HCPO regarding their complaints, provided an "illegally taken" email from Russo's computer and leaked information to the local newspaper. The second

amended complaint added little else regarding how DeSapio and the County Defendants initiated the criminal charges, a required element of the tort of malicious prosecution.

More importantly, whatever information was supplied, plaintiffs do not dispute — in fact they highlight — the actions of the prosecutor and the HCPO defendants that led to their ultimate arrest or prosecution. In Myrick v. Resorts International Casino & Hotel, 319 N.J. Super. 556, 559-60 (App. Div. 1999), the plaintiff alleged the defendant casino, her employer, initiated a malicious prosecution by reporting her innocent mistaken cashing of another employee's paycheck to the Division of Gaming Enforcement (DGE), which in turn caused the plaintiff's arrest on criminal charges. Ultimately, those charges were administratively dismissed. Id. at 562.

In affirming the motion judge's grant of summary judgment, we concluded the casino "did not institute the prosecution of the defendant." Id. at 563. We cited MacLaughlin v. Lehigh Valley R.R. Co., 93 N.J.L. 263 (Sup. Ct. 1919), which "held that a company reporting suspected criminal activity to the authorities cannot be liable for malicious prosecution when the authorities decide to prosecute the suspected criminals." Id. at 263-64. Although the casino called the DGE to investigate the bank's inquiry regarding the check, we concluded it "did not 'put the [criminal]

25                                                        A-2479-15T1

proceedings in motion.'" Id. at 564-65 (quoting Lind, 67 N.J. at 263).

We applied a similar analysis to the plaintiff's claims against the bank that notified the casino. Id. at 566-67. We reasoned, "the casino defendants cannot be considered to have put the law in motion. Certainly, then, the bank defendants, who are one step removed from the casino defendants, could not be considered to have done so either." Id. at 567. Here, the allegations in the amended complaint and the second amended complaint fail to state a cause of action against the County Defendants and DeSapio for common law malicious prosecution.

In her written decision dismissing plaintiffs' federal § 1983 cause of action premised on malicious prosecution, Judge Hochberg concluded the indictments "were prima facie evidence of probable cause to prosecute," and the "presumption of [grand jury regularity] will only be overcome by evidence that the presentment was procured by fraud perjury or other corrupt means." (Citations omitted). She concluded the amended complaint, which never asserted the evidence provided to the grand jury was false, and only stated in conclusory terms there was a lack of probable cause supporting the indictments, was insufficient under federal pleading standards.

Our Court has said, "[a]lthough a grand jury indictment is prima facie evidence of probable cause to prosecute, when the facts underlying it are disputed, the issue must be resolved by the jury." Helmy, 178 N.J. at 191 (citing Zalewski v. Gallagher, 150 N.J. Super. 360, 367-68 (App. Div. 1977). However,

> [t]he fact of a favorable termination sheds no light on the existence of probable cause at the time of the initial complaint; the burden remains on the plaintiff to demonstrate by independent proof that the criminal complaint was filed without probable cause.
>
> [Campione v. Adamar of New Jersey, Inc., 302 N.J. Super. 99, 120-21, (App. Div. 1997) (citation omitted), aff'd as mod., 155 N.J. 245 (1998).]

"Particularly, '[t]he plaintiff must establish a negative, namely, that probable cause did not exist.'" Brunson, 199 N.J. at 394 (quoting Lind, 67 N.J. at 263). Additionally, a plaintiff must demonstrate the defendant's actions were actuated by malice, i.e., the "intentional doing of a wrongful act without just cause or excuse." Id. at 395 (citations omitted).

Here, the malicious prosecution count in the amended complaint asserted few facts regarding the specific activities of the HCPO Defendants that demonstrated a lack of probable cause or that their actions were actuated by malice. Most of the allegations were regarding the County Defendants and DeSapio.

As noted, the amended complaint and the second amended complaint stated in conclusory language that there was no probable cause supporting the indictments. The DAG's August 23, 2010 letter that led to the dismissal never used the phrase "lack of probable cause," and most of the letter addressed the faulty legal theories underpinning the indictment. The second amended complaint alleged several additional facts regarding the HCPO Defendants' specific conduct, but it never asserted that Rowe or DeFillipis acted without just cause or excuse.

As a result, we conclude that the common law malicious prosecution counts in the amended and second amended complaints were properly dismissed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2479-15T1