**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1940-17T1

TIMOTHY MCGAURN,
ANTHONY N. FLORIO and
MELANIE DENISE SHAW,

      Plaintiffs-Respondents/
      Cross-Appellants,

v.

ATLANTIC CITY POLICE
OFFICER ANDRE CORBIN,
ATLANTIC CITY POLICE
OFFICER MARK BENJAMIN,
and ATLANTIC CITY POLICE
OFFICER FRANCO SYDNOR,

      Defendants-Appellants/
      Cross-Respondents,

and

ATLANTIC CITY POLICE
OFFICER MICHAEL BRAXTON,
JR., and CITY OF ATLANTIC
CITY,

      Defendants.

_____

Submitted October 28, 2019 – Decided November 21, 2019

Before Judges Fasciale, Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-3967-14.

Barker, Gelfand, James & Sarvas, attorneys for appellant/cross-respondent Andre Corbin (Todd Jason Gelfand, on the brief).

Jasinski, PC, attorneys for appellants/cross-respondents Mark Benjamin and Franco Sydnor (John C. Hegarty and Rebecca D. Winkelstein, on the brief).

Alan M. Lands, attorney for respondents/cross-appellants Timothy McGaurn and Anthony Florio.

Cooper Levenson PA, attorneys for respondent/cross-appellant Melanie Denise Shaw (Bard L. Shober, of counsel and on the brief; Jennifer Broeck Barr, on the briefs).

PER CURIAM

Timothy McGaurn, Anthony N. Florio, and Melanie Denise Shaw (plaintiffs) filed this lawsuit against three police officers (Andre Corbin, Mark Benjamin, and Franco Sydnor) (collectively defendants) alleging they unlawfully entered their home, searched it, seized a rifle, and maliciously charged them with criminal trespass and possession of a weapon for an unlawful purpose. A jury found in plaintiffs' favor only on their malicious prosecution

claim. The trial judge then entered judgment, which awarded counsel fees to plaintiffs.

Defendants appeal from the final judgment and challenge orders that collectively denied their motions for summary judgment, directed verdicts, judgment notwithstanding the verdict (JNOV), and reconsideration. Defendants primarily contend they were entitled to qualified immunity. Plaintiffs cross-appeal from the entry of fees, arguing that the fee enhancement was insufficient.

We conclude that defendants are entitled to summary judgment as a matter of law based on qualified immunity. We therefore reverse the final judgment under review. Consequently, our reversal of the final judgment renders plaintiffs' cross-appeal moot.

I.

Defendants responded to reports that a man inside an abandoned home was threatening juveniles with a gun. Believing that the house was abandoned, defendants entered the house without a warrant. While inside, they found a rifle and plaintiffs, who stated they lived in a homeless shelter. Defendants charged them with a weapons offense and criminal trespass. Defendants later learned that the rifle was inoperable, and the prosecutor dismissed the charges.

A-1940-17T1

On appeal, defendants contend that their actions were objectively reasonable given the circumstances presented to them, and that no reasonable officer in their situation would have believed that they were violating plaintiffs' rights. They argue that they reasonably believed the house was abandoned, that they had probable cause to bring the charges, and that they were therefore entitled to qualified immunity.

## II.

Our standard of review is settled. Summary judgment may be granted when, considering the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). When reviewing an order granting summary judgment, we apply the same standards that the trial judge applied when ruling on the motion. Oyola v. Xing Lan Liu, 431 N.J. Super. 493, 497 (App. Div. 2013).

The law on qualified immunity is established as well. Whether an officer is entitled to qualified immunity is a question of law for the court to decide. Morillo v. Torres, 222 N.J. 104, 119 (2015). As the United States Supreme Court explained:

A-1940-17T1

> Qualified immunity is an entitlement not to stand trial
> or face the other burdens of litigation. The privilege is
> an <u>immunity from suit</u> rather than a mere defense to
> liability; and like an absolute immunity, [qualified
> immunity] is effectively lost if a case is erroneously
> permitted to go to trial.
>
> [<u>Saucier v. Katz</u>, 533 U.S. 194, 200-01 (2001)
> (quotations and citations omitted).]

Thus, the court should decide a request for qualified immunity at the earliest possible time "so that the costs and expenses of trial are avoided where the defense is dispositive." <u>Id.</u> at 200; <u>accord</u> <u>Morillo</u>, 222 N.J. at 119. Consequently, defendants moved for summary judgment early on in the litigation.

"The doctrine of qualified immunity shields law enforcement officers from personal liability for civil rights violations when the officers are acting under color of law in the performance of official duties." <u>Morillo</u>, 222 N.J. at 107. It protects officers who performed their duties in an "objectively reasonable" manner, regardless of whether they made a mistake of fact. <u>Id.</u> at 108; <u>accord</u> <u>Saucier</u>, 533 U.S. at 206 (explaining that "[o]fficers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution"). The doctrine

A-1940-17T1

does not protect "officers who are plainly incompetent in the performance of their duties or who knowingly violate the law." Ibid.

In deciding whether an officer is entitled to qualified immunity, New Jersey courts apply the two-prong test set forth in Saucier, 533 U.S. at 199; Morillo, 222 N.J. at 114-115. A court must determine: (1) whether the officer's actions violated a constitutional or statutory right that was clearly established at the time of the incident; and (2) whether reasonable officers in the same situation would have believed that the plaintiff's conduct was unlawful and that the officer's actions in response to the plaintiff's conduct was reasonable. Morillo, 222 N.J. at 114; Saucier, 533 U.S. at 199.

With respect to the first prong, "the clearly established law must be 'particularized' to the facts of the case." White v. Pauly, 580 U.S. ___, ___, 137 S. Ct. 548, 552 (2017) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" Morillo, 222 N.J. at 118 (citations omitted). If the right was not clearly established at the time, the inquiry ends there, and the officer is entitled to qualified immunity. Saucier, 533 U.S. at 199.

A-1940-17T1

As to the second prong, the court assesses the officer's actions under an objectively reasonable test, considering all relevant facts and circumstances from an "on-scene perspective." Id. at 205. The court should not apply "'20/20 vision of hindsight,'" but rather, should give "deference to the judgment of reasonable officers on the scene." Ibid. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). "[O]nly the facts that were [known] to the defendant officers" are relevant to the inquiry. White, 580 U.S. at ___, 137 S. Ct. at 550. The officer bears the burden of proving that his or her actions were reasonable by a preponderance of the evidence. Morillo, 222 N.J. at 119.

### III.

Officer Corbin was the first to arrive on the scene after a pedestrian, Marcus Moses, notified him that someone was inside the house and threatening juveniles with a gun. Moses made a similar report to a police dispatch unit, and also stated that the house was abandoned, which prompted Officers Benjamin and Sydnor to respond to the scene. Officer Sydnor testified that he believed the house was abandoned "[f]or a long time[,]" and his belief was consistent with the house's appearance. Officer Corbin found the juveniles at the back of the house, and they corroborated Moses's report. Thus, defendants had an

7

objectively reasonably belief that the home was abandoned and the juveniles were threatened with a gun based on the facts known to them when they arrived.

While the warrantless entry and search of a home is presumptively unconstitutional under the Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, and Article I, Paragraph 7 of the New Jersey Constitution, a defendant has no right to challenge the search or seizure if the State can show that property was abandoned. State v. Brown, 216 N.J. 508, 527 (2014) (citing State v. Johnson, 193 N.J. 528, 548 (2008)). Because defendants had an objectively reasonable belief that the house was abandoned, it was unnecessary for them to get a warrant. Thus, defendants did not violate plaintiffs' constitutional rights when they entered and searched the abandoned house without a warrant.

After defendants entered the house, they had an objectively reasonable belief that plaintiffs had no right to be there, as the house appeared abandoned and plaintiffs gave a homeless shelter as their home address. These facts established probable cause to arrest and charge plaintiffs with criminal trespass. The probable cause standard is:

> [A] well-grounded suspicion that a crime has been or is being committed. Probable cause exists where the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy

> information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed. The substance of all the definitions of probable cause is a reasonable ground for belief of guilt.
>
> [State v. O'Neal, 190 N.J. 601, 612 (2007) (alterations in original) (citations and internal quotation marks omitted).]

A person commits criminal trespass if he or she "enters or surreptitiously remains in any . . . structure" "knowing that he is not licensed or privileged to do so." N.J.S.A. 2C:18-3(a).

The fact that plaintiffs had defenses to the criminal trespass charge (i.e., Shaw owned the house, and Florio and McGaurn were her guests) was irrelevant to the issue of qualified immunity because the standard for immunity considers only the facts known to the officers at the time. White, 580 U.S. at ___, 137 S. Ct. at 550. The facts led defendants to reasonably conclude that plaintiffs were squatters in an abandoned home, and thus committing a criminal trespass. Defendants were therefore entitled to immunity on the count that alleged wrongful arrest for criminal trespass.

Defendants also had probable cause to charge plaintiffs with possession of a firearm for an unlawful purpose. That crime is defined as "possession [of] any firearm with a purpose to use it unlawfully against the person or property of

another[.]" N.J.S.A. 2C:39-4(a)(1). When the police arrived at the house, they were aware of reports that someone inside threatened the juveniles with a gun. After they took Florio into custody, he admitted that he used the rifle to scare the juveniles, and he showed defendants where the gun was. The fact that the gun was an inoperable antique was irrelevant for probable cause purposes. State v. Orlando, 269 N.J. Super. 116, 128-29 (App. Div. 1993) (explaining that "there is no requirement that the weapon be operable" for purposes of establishing that the weapon is a "firearm" under Title 2C). These facts formed a defense to the charges, which plaintiffs were free to raise. Nonetheless, plaintiffs' defenses did not negate defendants' claims of qualified immunity. Thus, defendants were entitled to immunity on the count that alleged wrongful arrest for the weapons offense.

Defendants argue that because they had probable cause to charge plaintiffs with the underlying crimes, they were also entitled to qualified immunity on the malicious prosecution claim. Relying on Wildoner v. Borough of Ramsey, 162 N.J. 375 (2000), defendants urged the judge to reconsider the denial of summary judgment on this count based on qualified immunity. The judge rejected defendants' reliance on Wildoner.

In <u>Wildoner</u>, a neighbor in an apartment complex reported to police that the seventy-year-old defendant was "using loud and abusive language" against his wife and "was threatening to throw knives at [her]." <u>Wildoner</u>, 162 N.J. at 378. When police responded, they observed red marks on the wife's arm and a knife on the kitchen floor. <u>Ibid.</u> According to the police, the wife told them that the defendant had been drinking and that there was a pattern of abuse throughout their forty-eight year marriage. <u>Id.</u> at 379.

The police escorted the defendant out of the apartment in a wheelchair and charged him with simple assault. <u>Id.</u> at 378. After his wife refused to sign a domestic violence complaint, police applied for a temporary restraining order (TRO) on her behalf, which the municipal judge granted. <u>Ibid.</u> The following day the Law Division dismissed the TRO, and the State dismissed the assault charge. <u>Ibid.</u>

The defendant filed a civil rights suit alleging false arrest and imprisonment, mistreatment, and malicious prosecution. <u>Id.</u> at 379. The trial judge granted the officers qualified immunity, finding that their response to the situation was objectively reasonable, even though the wife did not pursue any action against the defendant and later denied that he threatened or attacked her. <u>Id.</u> at 384. The Court affirmed, explaining that the facts presented to the officers

11

established probable cause to arrest the defendant, and "probable cause [was] an absolute defense to [the] false arrest, false imprisonment, and malicious prosecution claims[.]" Id. at 389. Thus, courts must consider the facts available to the officer at the time of arrest, not facts that later surface and result in the dismissal of charges.

In denying reconsideration, the judge relied on Helmy v. City of Jersey City, 178 N.J. 183, 191 (2003), which was a false arrest and malicious prosecution case that did not address qualified immunity. In that case, the defendant's and the officers' versions of the facts differed significantly, and the jury had to decide whether the defendant's or the officers' version of events was true. Ibid. If the jury found the defendant's version credible, then the arrest and indictment lacked probable cause. Ibid. In discussing the indictment's effect on the defendant's claims, the Court said: "[a]lthough a grand jury indictment is prima facie evidence of probable cause to prosecute, when the facts underlying it are disputed, the issue must be resolved by the jury." Ibid.

In this case, the judge concluded that the indictment did not conclusively establish probable cause because the jury had to resolve whether defendants should have known that Shaw owned the house and that the gun was an inoperable antique. But only the facts known to the officers at the time of entry

and arrest were relevant to the qualified immunity issue.  <u>White</u>, 580 U.S. at ___, 137 S. Ct. at 550.  Those facts supported the qualified immunity claim and were not in dispute.  As the Court in <u>Morillo</u> explained, the facts that a jury may resolve must be limited to "'the who-what-when-where-why type of' fact issues" upon which a qualified immunity claim is premised.  <u>Morillo</u>, 222 N.J. at 119 (quoting <u>Schneider v. Simonini</u>, 163 N.J. 336, 355-56 (2000)).  In this case, those types of facts were undisputed and thus, there was no reason to submit such questions to the jury.  The reasonableness of the officers' actions was at the heart of the qualified immunity inquiry and should have been answered by the judge as a question of law.  It was not a factual question for the jury.

As to the principle of reasonableness, the officers need not believe a suspect's innocent explanation when deciding if the facts establish probable cause to arrest.  <u>See</u> <u>Illinois v. Gates</u>, 462 U.S. 213, 243 n.13 (1983) (stating "[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts"); <u>United States v. Funches</u>, 327 F.3d 582, 587 (7th Cir. 2003) (indicating "[o]f course, the mere existence of innocent explanations does not necessarily negate probable cause"); <u>State v. Arthur</u>, 149 N.J. 1, 11 (1997) (stating that "[s]imply because a defendant's

actions might have some speculative, innocent explanation does not mean that those actions cannot support articulable suspicions, if a reasonable person would find the actions are consistent with guilt").  As the prosecutor explained when she moved to dismiss the charges, the State could not meet its burden of proof (beyond a reasonable doubt) based on the evidence.  But that did not negate the existence of probable cause to arrest and charge plaintiffs nor defendants' entitlement to qualified immunity.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1940-17T1