JAMES N. ROSENAU AND NORAH ROSENAU, PLAINTIFFS-APPELLANTS, v. CITY OF NEW BRUNSWICK, NEW JERSEY, AND WORTHINGTON GAMON METER COMPANY OF NEWARK, NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued November 6, 1967—Decided February 5, 1968.

*Mr. Edward K. Zuckerman* argued the cause for appellants.

*Mr. Robert M. Graham* argued the cause for respondent Worthington Gamon Meter Company of Newark, New Jersey (*Messrs. Champi, Graham and Franchino,* attorneys).

The opinion of the court was delivered by

JACOBS, J. The Law Division entered a summary judgment in favor of Worthington which was reversed in the Appellate Division. 93 *N. J. Super.* 49 (1966). We granted certification on an application by the plaintiffs. 48 *N. J.* 578 (1967).

In 1942 the City of New Brunswick, which operates a municipal water system, purchased 60 water meters from the manufacturer, Worthington Gamon Meter Company. The City installed one of these meters in the plaintiffs' home in 1950. In 1964 the meter broke, causing damage to the plaintiffs' premises. Thereafter the plaintiffs filed a two-count complaint against the City and Worthington. In their first count, which sought recovery from the City, they alleged that it had been negligent in its servicing and maintenance of the meter and that as a result their property was damaged; in their second count, which sought recovery from Worthington, they alleged that Worthington had been negligent in the manufacture of the meter, that apart from negligence the meter was defective when manufactured, and that as a result they suffered the damage. Answers, along with contribution claims against each other, were filed by the City and Worthington and a further claim in the nature of indemnity was filed by the City against Worthington.

Worthington moved for summary judgment on the ground that the plaintiffs' claim against it was barred by the statute of limitations. The trial court granted its motion and entered a judgment in its favor as against the plaintiffs; it also dismissed the City's claims against Worthington for contribution and indemnification. The plaintiffs appealed to the Appellate Division where the matter was argued by the plaintiffs and Worthington; the City took no appeal and did not appear. The Appellate Division held that the statute of limitations had not barred the plaintiffs' claim insofar as it was grounded on negligence (93 N. J. Super., at p. 54) but had barred it insofar as it was based on the assertion of a defect in manufacture without any accompanying allegation of negligence. 93 N. J. Super., at p. 56. The plaintiffs' petition for certification sought review of the latter portion of the Appellate Division's holding; no cross petition attacking the former portion of the holding was filed by Worthington and the City filed no papers and entered no appearance at that time or thereafter.

In its brief before us, Worthington seeks to have the Appellate Division's judgment set aside and the trial court's summary judgment reinstated. Since it never filed a cross petition for certification seeking review of the Appellate Division's reversal, it is technically in no position to obtain such relief. See *Liberty Title & Trust Co. v. Plews*, 6 N. J. 28, 45 (1950); *Bruno v. City of Long Branch*, 21 N. J. 68, 70 (1956); *Franklin Discount Co. v. Ford*, 27 N. J. 473, 491 (1958). However the two portions of the holding in the Appellate Division were intertwined and, in the light of the grant of the plaintiffs' petition for certification, both will be dealt with here.

■■ It must firmly be borne in mind that at this stage of the proceeding we are concerned only with the question of limitations. We must assume, for present purposes, the truth of the allegations in the complaint notwithstanding that the plaintiffs may have difficulty at trial in establishing them, particularly in view of the long lapse of time since the meter

was manufactured. Admittedly the plaintiffs will have the burden, on their charge of negligence, of establishing the absence of due care in the course of manufacture and causally related damage (*Jakubowski v. Minnesota Mining and Manufacturing,* 80 *N. J. Super.* 184, *pp.* 191–94 (*App. Div.* 1963), *reversed on other grounds,* 42 *N. J.* 177 (1964)), and on the charge of defect in manufacture apart from negligence, they will have the burden of establishing, along with causation, that the meter was dangerously defective when it "left the defendant's hands." *Jakubowski v. Minnesota Mining and Manufacturing, supra,* 42 *N. J.,* at *p.* 182. See *Schipper v. Levitt & Sons, Inc.,* 44 *N. J.* 70, 92 (1965); *Restatement (Second) of Torts* § 402A (1965); *cf. Ford Motor Company v. Lonon,* 217 *Tenn.* 400, 398 *S. W. 2d* 240 (1966):

> There seems to be no unfairness in holding that a manufacturer who markets a product which is not only defective but unreasonably dangerous should be responsible for any physical harm which results to person or property, even though no privity of contract and no negligence can be established. It might be added that where the plaintiff can sustain the heavy burden of showing, as he must, that the product was in a dangerously defective condition at the time it left the hands of the manufacturer, it is quite likely that some negligence was involved even though this cannot be proved. See *Wade, supra,* 19 *Sw. L. J.* 5, (1965); Noel, Products Liability of Manufacturers—To Manufacturers of Products—The Drift Toward Strict Liability, 24 *Tenn L. Rev.* 963, 1012–1013 (1957). 398 *S. W. 2d,* at *pp.* 249–250.

See also Rapson, *Products Liability Under Parallel Doctrines: Contrasts Between the Uniform Commercial Code and Strict Liability in Tort,* 19 Rutgers *L. Rev.* 692, *pp.* 702–704 (1965).

Statutes of limitations are designed to stimulate litigants to prosecute their causes of action diligently and "to spare the courts from litigation of stale claims." *Chase Securities Corp. v. Donaldson,* 325 *U. S.* 304, 314, 65 *S. Ct.* 1137, 89 *L. Ed.* 1628, 1635 (1945). They penalize dilatoriness and serve as measures of repose. *Wood v. Carpenter,*

.101 *U. S.* 135, 139,.25 *L. Ed.* 807, 808. (1879). As phrased by Lord Atkinson in. *Board of Trade·v. Cayzer, Irvine & Co.* [1927] A. C. 610, 628; their whole.purpose "is to apply.to persons who have good causes of action which they could, if so disposed, enforce, and to deprive them. of. the power of enforcing them after they have lain by for the number of years respectively and omitted to enforce them." *Cf. Fernandi v. Strully,* 35 *N. J.* 434, 438 (1961); *Kyle v. Green Acres of Verona, Inc.,* 44 *N. J.* 100, 108 (1965).·

New Jersey's statutes provide that actions for tortious injury to property and for injury to the person resulting from wrongful acts, neglects or defaults, shall be commenced within six and two years respectively, "after the cause of any such action shall have accrued." *N. J. S.* 2A:14–1; *N. J. S.* 2A:14–2. The Legislature has not specified when the cause of action shall be deemed to have accrued and the matter has therefore been left entirely to judicial interpretation and administration. *Fernandi v. Strully, supra,* 35 *N. J.,* at *p.* 449. Our courts have identified the accrual of the cause of action as the date on which "the right to institute and maintain a suit" first arose. *Fredericks v. Town of Dover,* 125 *N. J. L.* 288, 291 (*E. & A.* 1940). When dealing with a cause of action grounded on negligent injury or damage to person or property they have held that the cause of action accrued not when the negligence itself took place but when the consequential injury or damage occurred. See *Church of Holy Com'n v. Paterson, etc., R. R. Co.,* 66 *N. J. L.* 218, 226, 236 (*E. & A.* 1901); *Ochs v. Public Service Railway Co.,* 81 *N. J. L.* 661, 662 (*E. & A.* 1911). As pointed out by Justice Bergen in *Ochs:*

* * * it is the injury and not alone the negligent act which gives rise to the right of action, for a negligent act is not in itself actionable, and only becomes the basis when it results in injury to another. In order to support an action there must be not only the negligent act, but a consequential injury which is the gravamen of the charge, and this distinction between the negligent act and its consequences is recognized in deciding when a cause of action arises in cases where the bar of the statute of limitations is interposed. 81 *N. J. L.,* at 662.

See *Watkins v. Myers,* 12 *N. J.* 71, 74 (1953); *Kovacs v. Everett,* 37 *N. J. Super.* 133, 137 *(App. Div.* 1955), certification denied 20 *N. J.* 466 (1956).

In his discussion of the elements of a negligence cause of action, Dean Prosser noted that since it developed chiefly out of the old form of action on the case, it retained the rule that proof of actual damage is an essential part of the plaintiff's case; and he noted further that nominal damages, to vindicate a technical right,. cannot be recovered. in a negligence action where no actual loss has occurred. *Prosser, Torts* § 30, *p.* 146 (3*d ed.* 1964); see also 2 *Harper and James, Torts* § 25.1, *p.* 1300 (1956); *McCormick, Damages* § 22, *p.* 88 (1935). New Jersey's position that a verdict of no cause may properly be returned against an unhurt passenger though the drivers of both of the colliding vehicles were negligent, in effect applies Prosser's approach. See *Ardis v. Reed,* 86 *N. J. Super.* 323, 330 *(App. Div.),* affirmed 46 *N. J.* 1 (1965); *Kovacs v. Everett, supra,* 37 *N. J. Super.,* at *p.* 136. Numerous decisions in other states subscribe to the doctrine that a plaintiff's cause of action accrues for limitation purposes when he suffers actual consequential damage or loss from the defendant's negligence. See *White v. Schnoebelen,* 91 *N. H.* 273, 18 *A.* 2*d* 185, 186 (1941); *Foley v. Pittsburgh-Des Moines Co.,* 363 *Pa.* 1, 68 *A.* 2*d* 517, 535 (1949); *Di Gironimo v. American Seed Co.,* 96 *F. Supp.* 795, 797 *(E. D. Pa.* 1951); *Chitty v. Horne-Wilson, Inc.,* 92 *Ga. App.* 716, 89 *S. E.* 2*d* 816, 819 (1955); *Hanna v. Fletcher,* 97 *U. S. App. D. C.* 310, 231 *F.* 2*d* 469, 58 *A. L. R.* 2*d* 847 *(D. C. Cir),* cert. denied, *Gichner Iron Works v. Hanna,* 351 *U. S.* 989, 76 *S. Ct.* 1051, 100 *L. Ed.* 1501 (1956); *Rodibaugh v. Caterpillar Tractor Co.,* 225 *Cal. App.* 2*d* 570, 37 *Cal. Rptr.* 646, 647–648 . *(Dist. Ct. App.* 1964); cf .*Kitchener v. Williams,* 171 *Kan.* 540, 236 *P.* 2*d* 64, 69 (1951); *Merrimack Mutual Fire Insurance Co. v. Radalec, Inc.,* 126 *So.* 2*d* 848, 850 *(Ct. App. La.* 1961); *Howard v. United Fuel Gas Company,* 248 *F. Supp.* 527, 529 *(S. D. W. Va.* 1965);

3 *Frumer and Friedman, Products Liability* § 39.01 (1967);
*Developments in the Law—Statutes of Limitations,* 63
*Harv. L. Rev.* 1177, 1201 (1950).

*Fernandi v. Strully, supra,* 35 *N. J.* 434, was a malprac-
tice case based on the leaving of a foreign object in a
patient's body during the course of an operation. We held
that the statutory period of limitations began to run, not
on the date when the plaintiff first suffered damage from the
defendant's negligence, but on the later date when he first
knew or had reason to know he had a cause of action. This
highly equitable "discovery" principle is receiving ever in-
creasing support throughout the country. See *Spath v.
Morrow,* 174 *Neb.* 38, 115 *N. W.* 2d 581, 584–585
(1962); *Billings v. Sisters of Mercy of Idaho,* 86 *Idaho* 485,
389 *P. 2d* 224, 232 (1964); *Morgan v. Grace Hospital, Inc.,*
149 *W. Va.* 783, 144 *S. E. 2d* 156, 162 (1965);
*Waldman v. Rohrbaugh,* 241 *Md.* 137, 215 *A. 2d* 825, 830
(1966); *Berry v. Branner,* 421 *P. 2d* 996 (*Or.* 1966);
*Johnson v. St. Patrick's Hospital,* 417 *P. 2d* 469 (*Mont.*
1966); *Gaddis v. Smith,* 417 *S. W. 2d* 577 (*Tex.* 1967);
cf. *Seitz v. Jones,* 370 *P. 2d* 300 (*Okl.* 1962); *Johnson v.
Caldwell,* 371 *Mich.* 368, 123 *N. W. 2d* 785 (1963). See
also *Ayers v. Morgan,* 397 *Pa.* 282, 154 *A. 2d* 788 (1959.);
*Weinstock v. Eissler,* 224 *Cal. App. 2d* 212, 36 *Cal. Rptr.*
537, 546 (*Dist. Ct. App.* 1964); *Chrischilles v. Griswold,*
150 *N. W. 2d* 94 (*Iowa* 1967); *Moonie v. Lynch,* 64 *Cal.
Rptr.* 55 (*Dist. Ct. App.* 1967). We need not inquire
whether it should be extended so as to apply universally
since the happening of the damage here and the plaintiffs'
discovery of it occurred at the very same moment. *Cf.
Rothman v. Silber,* 90 *N. J. Super.* 22 (*App. Div.*), certifi-
cation denied 46 *N. J.* 538 (1966), commented upon in 21
Rutgers L. Rev. 778 (1967); *Repass v. Keleket X-Ray
Corp.,* 212 *F. Supp.* 406 (*D. N. J.* 1962).

[8] The plaintiffs here suffered no harm whatever before
the meter broke and they could not have instituted any
action against Worthington before that time. When the

meter did break and their property was damaged, allegedly as the result of Worthington's negligence, they for the first time had "the right to institute and maintain a suit." *Fredericks v. Town of Dover, supra;* 125 *N. J. L.,* at *p.* 291. To declare them barred by limitations before they had any cause of action on which they could start legal proceedings would offend common sense and justice. Surely the Legislature never contemplated any such incongruous result. See *Hughes v. Eureka Flint, etc., Co., Inc.,* 20 *N. J. Misc.* 314, 316 (*Mercer Cnty. Cir. Ct.* 1939) : "While the statute of limitations is one of repose and security, it was never intended to defeat a remedy before the right existed." We affirm the Appellate Division's holding below that, notwithstanding the lapse of time, the plaintiffs were entitled to institute their negligence action expeditiously, as they did, after they first suffered damage. See 93 *N. J. Super.,* at *p.* 54.

■ We come now to the issue of whether the plaintiffs were entitled to maintain their action insofar as it was grounded, not on an allegation of negligence, but on an allegation that the meter was defective when it left the defendant's hands and that the defect proximately resulted in the damage to the plaintiffs' property. In recent years we have broadly recognized, as many courts have elsewhere, that where manufacturers make and distribute defective products they may justly be held accountable for injuries proximately resulting to persons or properties, despite absence of privity or showing of negligence. *See Henningsen v. Bloomfield Motors, Inc.,* 32 *N. J.* 358 (1960) ; *Santor v. A & M Karagheusian, Inc.,* 44 *N. J.* 52 (1965) ; *Schipper v. Levitt & Sons, Inc.,* 44 *N. J.* 70 (1965). In *Henningsen* a manufacturer who sold a defective automobile to a dealer was held liable to the ultimate user who suffered injuries while driving the automobile. In *Santor* a purchaser of a defective rug from a retailer was permitted to recover his economic loss in a direct action against the manufacturer. And in *Schipper* we held that a builder of mass homes could

be held liable in the event the homes contained defects which proximately resulted in injury.

· Although in *Henningsen* this Court spoke in terms of breach of implied warranty, it pointed out in *Santor* that this was merely a "convenient legal device or formalism" (44 *N. J.,* at 64) and that clarity of thought and expression would be served by frankly recognizing that the manufacturer's responsibility to the ultimate consumer is grounded in "strict liability in tort." 44 *N. J.,* at *pp.* 64–66. Later in *Schipper* it noted that *Santor* had "approved, in lieu of warranty terminology, the strict liability in tort terminology, voiced in *Greenman v. Yuba Power Products, Inc., supra,* 59 *Cal.* 2d 57, 27 *Cal. Rptr.* 697, 377 *P.* 2d 897." 44 *N. J.,* at *p.* 90. In his work on torts, Dean Prosser pointed out that the warranty terminology had introduced unnecessary complications and he expressed the opinion that "it would be far simpler if it were simply said that there is strict liability in tort, declared outright, without an illusory contract mask." *Prosser, Torts* § 97, *p.* 681 (3*d ed.* 1964). More recently he put the matter this way: "It has been said over and over again that this warranty—if that is the name for it—is not the old sales warranty, it is not the warranty covered by the Uniform Sales Act or the Uniform Commercial Code. It is not a warranty of the seller to the buyer at all, but it is something separate and distinct which sounds in tort exclusively, and not at all in contract; which exists apart from any contract between the parties; and which makes for strict liability in tort." Prosser, *Spectacular Change: Products Liability in General,* 36 *Cleveland* B. A. J. 149, 167–168 (1965).

In *Seely v. White Motor Company,* 63 *Cal.* 2d 9, 45 *Cal. Rptr.* 17, 403 *P.* 2d 145 (1965) the California Supreme Court declined to apply the strict liability in tort approach, as it was sweepingly applied in *Santor,* to a situation where the plaintiff suffered only economic loss or loss of bargain as distinguished from physical injury to his person or property. See Note, *Economic Loss in Products Liability Jurisprudence,* 66 Colum. L. Rev. 917 (1966); Comment, *Manu-*

*facturer's Responsibility For Defective Products: Continuing Controversy Over the Law To Be Applied,* 54 Cal. L. Rev. 1681 (1966) ; Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?,* 114 U. Pa. L. Rev. 539 (1966). The Restatement in its treatment of the manufacturer's strict liability in tort also speaks only in terms of physical harm to the ultimate user or consumer, or to his property. *Restatement (Second) of Torts* § 402A (1965). For purposes of the present case we need not revisit *Santor* for the plaintiffs here are not asserting any claim for economic loss or loss of bargain; their claim is for physical harm to their property which even *Seely* acknowledged is to be dealt with as akin to personal injury so far as the doctrine of strict liability in tort is concerned. 45 *Cal. Rptr.,* at 24, 403 *P. 2d,* at 152.

The Appellate Division's opinion seems to stress the fact that Worthington sold the meter to the City and never intended that it be sold to the public. 93 *N. J. Super.,* at 55. But it knew that the meter would be incorporated by the City into its water supply system and that members of the public would come in contact with it when it was placed in their home. It also knew that if the meter was manufactured defectively so as to be unable to withstand the rigors of its intended use over a substantial period of time, serious harm to persons and property would probably result. True, it had no business relationship with the homeowner and with that in mind the warranty and other provisions of the Sales Act and the Uniform Commercial Code would appear to be generally inapplicable; but with *Santor* in mind the doctrine of strict liability in tort would appear to be clearly and most justly applicable whether Worthington be viewed as the maker of a defective product or the maker of a component part of a defective product (93 *N. J. Super.,* at *p.* 55) which proximately caused damage to the home of the plaintiffs. See Prosser, *The Fall of the Citadel (Strict Liability to the Consumer),* 50 Minn. L. Rev. 791, 814–820 (1966).

██ *Santor.* held that the notice provisions of the Sales Act had no application to actions by consumers against manufacturers grounded on strict liability in tort (44 *N. J.*, at *p.* 68); similarly the Restatement noted that its strict liability rule was not governed by the provisions of the Uniform Sales Act or those of the Uniform Commercial Code as to warranties and other designated subjects. *Restatement, supra* § 402, comment *m.* See also *Suvada v. White Motor Company,* 32 *Ill. 2d* 612, 210 *N. E. 2d* 182, 188 (1965); Shanker, *Strict Tort Theory of Products Liability and the Uniform Commercial Code,* 17 W. Res. L. Rev. 5, 7 (1965). The limitation period prescribed by the Uniform Commercial Code (*N. J. S.* 12A:2–725) was designed, as expressed in an accompanying comment, to introduce a uniform period of limitations "for sales contracts" thus eliminating jurisdictional variations for business concerns which operate on a nationwide scale. It explicitly relates to actions "for breach of any contract for sale" and presumably was not intended to apply to tort actions between consumers and manufacturers who were never in any commercial relationship or setting. See *Abate v. Barkers of Wallingford, Inc.,* 27 *Conn. Sup.* 46, 229 *A. 2d* 366, 369 (*C. P.* 1967); *Matlack, Inc. v. Butler Manufacturing Company,* 253 *F. Supp.* 972, 976 (*E. D. Pa.* 1966); *cf. Hackworth v. Ralston Purina Company,* 214 *Tenn.* 506, 381 *S. W. 2d* 292, 293 (1964). See also Rapson, *supra,* 19 Rutgers L. Rev. at 706.

██ The Appellate Division recognized that the plaintiffs' claim grounded on strict liability in tort was governed by *N. J. S.* 2A:14–1 which directs that every action for tortious injury to property must be commenced within 6 years after the cause of action "shall have accrued." 93 *N. J. Super.,* at *p.* 53. But in reliance on contract principles dealt with in breach of warranty actions by buyers against their sellers (93 *N. J. Super.,* at *p.* 53; *E. O. Painter, etc., Co. v. Kil-Tone Co.,* 105 *N. J. L.* 109 (*E. & A.* 1928)), it found that the plaintiffs' cause of action accrued when Worthington first delivered the allegedly defective meter to the City in 1942.

That approach wholly ignored the tort basis of the plaintiffs' claim against Worthington, as formulated in *Santor*, and incongruously served to bar their claim long before it arose and well before the meter was installed. Their claim rested, not on any contractual basis, but on a breach of duty with consequential injury. As in the negligence field discussed earlier in this opinion, it accrued, not when duty was breached by the manufacture and distribution of the allegedly defective meter, but when the actual injury occurred. That was in 1964 when the meter broke causing damage to the plaintiffs' premises. The institution of their strict liability in tort action shortly thereafter was timely within the terms of *N. J. S.* 2A:14–1.

The Appellate Division was apparently persuaded by the hardship which may result to Worthington by the plaintiffs' pursuit of their claim grounded on strict liability in tort. 93 *N. J. Super.*, at *p.* 56. But that hardship represents little above that necessarily entailed by the plaintiffs' negligence claim which is pursuable under the long-standing precedents in our State. It must be borne in mind that although the plaintiffs will be relieved of the responsibility of affirmatively establishing failure to exercise due care in the process of manufacture, they will still have the burden, intensified by the lapse of time, of establishing that the meter was actually defective when it left Worthington's hands and that the defect proximately resulted in the damage to their property. See *Ford Motor Company v. Lonon, supra,* 398 *S. W. 2d,* at *pp.* 249–250; *cf. Schipper v. Levitt & Sons, Inc., supra,* 44 *N. J.,* at *p.* 92; Sandler, *Strict Liability and the Need for Legislation,* 53 *Va. L. Rev.* 1509, 1509–1510 (1967).

On the other hand, the hardship to the plaintiffs under the Appellate Division's approach would indeed be severe. They had no claim against Worthington before the meter broke causing damage to their home. And of course they had no right to sue Worthington before that time. When their right to institute action first accrued they moved with expedition

asserting, *inter alia*, a claim grounded on the now well recognized doctrine of strict liability in tort. To hold them barred by limitations in these circumstances would comport neither with the terms nor the spirit of the statute. In considering the relative hardships we must not lose sight of the crucial fact that Worthington originally placed the allegedly defective product in the stream of trade. As manufacturer and distributor it is the one best situated to protect against consequential damage as a business risk of distribution, whereas the injured parties are wholly innocent and largely incapable of protecting themselves. Finally, we need do no more than adapt the following language of our late distinguished colleague Justice Oliphant while sitting as a Circuit Court Judge in *Hughes v. Eureka Flint, etc., Co., Inc., supra:*

> It imposes hardships upon a defendant by compelling him to meet a claim involving his actions of many years before, but it would be even more undesirable and unjust to bar a plaintiff's remedy before his cause of action existed, which is certainly equally violative of the intent of the statute, definitely not violative of its language and infinitely more abhorrent to logic and justice. 20 *N. J. Misc.*, at *p.* 316.

The judgment of the Appellate Division is modified and the cause is remanded to the Law Division for further proceedings in conformity with this opinion.

Modified.

*For modification*—Chief Justice Weintraub and Justices JACOBS, FRANCIS, PROCTOR, GOLDMANN, SCHETTINO and HANEMAN—7.

*Opposed*—None.