**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3715-16T3

MARIANNE MURPHY,

    Plaintiff-Respondent,

v.

CHARLES F. SHAW, III, ESQ.,

    Defendant-Appellant.

_____

> Argued February 5, 2019 – Decided June 21, 2019
>
> Before Judges Rothstadt, Gilson and Natali.
>
> On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-0869-13.
>
> Diana C. Manning argued the cause for appellant (Bressler, Amery & Ross, PC, attorneys; Diana C. Manning and Benjamin James Di Lorenzo, on the briefs).
>
> Joseph E. Collini argued the cause for respondent (Emolo & Collini, attorneys; John C. Emolo, on the brief).

PER CURIAM

In this legal malpractice action, defendant Charles F. Shaw, III appeals from the Law Division's June 10, 2016 order denying his motion for summary judgment, the denial of his motions for directed verdicts, and its April 26, 2017 judgment memorializing a jury verdict that found defendant was negligent in his representation of plaintiff Marianne Murphy. The jury's verdict was based upon its finding that defendant breached his duty to plaintiff by failing to serve a Tort Claims Notice[1] so she could pursue malicious prosecution and spoliation of evidence claims against the Township of Hazlet and one of its police officers who responded to a road rage incident in which plaintiff was involved.

On appeal, defendant contends that as matter of law he owed no duty to plaintiff to serve a Tort Claims Notice because her causes of action against the municipality and its officer did not accrue, if ever, until after plaintiff terminated defendant as her attorney. Moreover, even if he had been representing her at the appropriate time, plaintiff could not prevail against the municipality or its officers because the underlying prosecution against her did not terminate in her

---

[1] In New Jersey, the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, governs claims against a public entity for money damages. "'[T]he Act establishes the procedures by which claims may be brought,' including a mandatory pre-suit notification of [the] claim." Rogers v. Cape May Cty. Office of the Pub. Def., 208 N.J. 414, 420 (2011) (first alteration in original) (quoting Beauchamp v. Amedio, 164 N.J. 111, 116 (2000)).

favor nor could she establish damages. Finally, he contends that the trial court erred by admitting certain "net opinion" testimony at trial, failed to allow defendant to challenge that testimony, and improperly instructed the jury that plaintiff established as a matter of law the "favorable disposition" element of her malicious prosecution claim.

We have considered defendant's contentions in light of the record and applicable principles of law. We reverse and remand for entry of judgment in defendant's favor because the trial court's decisions were based on a mistaken application of the law as it related to whether and when plaintiff's causes of action arose and to whether the underlying municipal court action was terminated favorably for malicious prosecution purposes.

I.

Plaintiff's action against defendant arose from her unsuccessful claims against the Hazlet Police Department (HPD) and one of its officers, which related to her involvement in a June 2, 2010 road rage incident with Raeanne Martin. We detailed the facts surrounding that incident and the parties' and their witnesses' various accounts of what transpired that day in an earlier unpublished opinion in which we reversed a jury's "no cause" verdict entered in Martin's favor. See Murphy v. Martin, No. A-1762-15 (App. Div. Apr. 3, 2017) (slip op.

at 17) ("Murphy II"). We need not set forth all of those facts here. Instead, we recount the facts pertinent to plaintiff's claim against defendant.

According to plaintiff, the road rage incident culminated in Martin's vehicle striking plaintiff's vehicle twice. Thereafter, plaintiff called 9-1-1. Plaintiff alleged that she stayed on the line with the police dispatcher while waiting for responding officers so that the dispatcher could hear Martin screaming at her.

Two HPD officers responded to plaintiff's call. According to plaintiff, one of the officers was greeted at the scene by Martin, who was evidently a friend of the officer. Plaintiff described the officer as extremely abrasive, gruff, and confrontational with her. She also alleged that the officer made sexually suggestive comments and gestures towards her. Plaintiff told the officer that she had been injured and needed medical assistance, which the officer refused to obtain for her. Plaintiff testified that six to eight witnesses attempted to communicate what they saw to the other HPD officer but were ignored. Rather, the officers charged plaintiff with failure to produce her vehicle registration, N.J.S.A. 39:3-29(b), and disorderly conduct for wielding a weapon, in violation of the Township of Hazlet's Ordinance 959-54.

The weapon was what Martin described as a "billy club" and plaintiff contended was a souvenir trinket baseball bat that she obtained at a minor league baseball game, which she used for protection after recently being attacked by dogs during a run. Contrary to Martin's contention and the police report, plaintiff denied that she ever got out of her car or confronted Martin with the bat or otherwise.

The following day, plaintiff retained defendant. The parties disputed the scope of defendant's representation. Plaintiff maintained that she hired him to represent her in the municipal court action and in civil claims against Martin, the two police officers, and Hazlet. Defendant contended that he was only retained to represent plaintiff in the municipal court matter regarding the charges brought against her, although he was aware from plaintiff that one officer "was nasty and yell[ed]" at her at the scene of the incident.

Defendant recommended that plaintiff get a copy of the police report in order to identify the other driver, Martin, so plaintiff could file a complaint against Martin in the municipal court. Defendant explained that he did so "[b]ecause [his] job [wa]s to have the[] two complaints dismissed against [plaintiff]. And one of the best ways to do that is to charge the other driver[.]" According to defendant, he also advised plaintiff that based on her description

of pain she was suffering in her back, legs, and neck, she should report the accident to her insurance company so it would pay her medical expenses. According to plaintiff, defendant also encouraged her to pursue a claim against the police officers but did not mention that she needed to file a Tort Claims Notice in order to do so. Defendant did not dispute that he never discussed Tort Claims Notices with plaintiff.

After meeting with plaintiff, defendant sent her a retainer letter that confirmed he would be representing plaintiff in the municipal court matter regarding the charges made against her. The letter also confirmed his advice to her about obtaining the police report and filing charges against Martin.

Although not mentioned in his retainer letter, plaintiff believed defendant was also representing her in connection with her claims against her insurance carrier for the payment of her medical bills. She relied upon a statement made by defendant in an August 2010 letter that if her insurance carrier did not pay her benefits "we will simply sue them," and his advice to her to not speak to any insurance company's investigators. According to plaintiff, her carrier was not paying her bills because of the pending municipal court charges.

Defendant sent a demand for discovery to the Hazlet prosecutor. He later followed up by requesting a copy of the tape recording of plaintiff's 9-1-1 call.

6

Although defendant received some discovery, he did not receive the tape recording.

Plaintiff obtained the police report and sent defendant notes about inaccuracies in the report. Among other things, plaintiff's letter to defendant stated that one officer made sexually suggestive hand motions and comments to her at the scene of the accident. It also contained bullet points that said, "The 911 tape?" and "The video tape?" According to plaintiff, these were questions addressed to defendant inquiring about whether he had obtained the recording of her 9-1-1 call and the dash cam video from HPD.

Plaintiff went to the HPD on June 23, 2010 to file charges against Martin. While there, she spoke to a detective who brought the bat the HPD officers said they had confiscated from plaintiff's car. Plaintiff observed the bat was not her souvenir bat, but a much larger bat, "two or three times larger. It was a regular little league bat." She was "concerned . . . quite a bit" by this discrepancy.

Plaintiff notified defendant in writing about what occurred at the police department. Plaintiff wrote that the detective asked her three times if the larger bat belonged to her and that she stated it did not each time. Plaintiff also again requested that defendant obtain the tape recording of the 9-1-1 call and the dash cam video of the scene.

Plaintiff's municipal court date was scheduled for September 23, 2010. Defendant subsequently scheduled and then rescheduled three times a meeting with plaintiff to prepare for trial before cancelling the last scheduled date, which was the day before the trial. During a call with plaintiff, defendant informed her that he had another trial in Superior Court scheduled for that week and would not be able to represent her at her trial unless it was adjourned.

As it turned out, defendant's Superior Court matter was postponed and when he contacted plaintiff to advise that he would be available, he was told that she hired new counsel. Plaintiff terminated her relationship with defendant on September 22, 2010, when she picked up her file and defendant refunded her entire retainer payment, less a small amount for costs. The next day, defendant signed a substitution of attorney withdrawing as counsel for plaintiff in favor of another attorney.

However, when plaintiff appeared in municipal court, she did so without counsel. The court assigned her a public defender and carried the matter to March 24, 2011. On that date, both plaintiff and Martin appeared before the municipal court. A copy of the 9-1-1 tape was given to plaintiff's attorney. At that time, the parties agreed to dismiss all charges against plaintiff and Martin and as found by the municipal court, the dismissals were voluntary. Notably,

there was no finding that the charges against plaintiff were not based upon probable cause.

After the charges against her were dismissed, plaintiff hired an attorney to file an internal affairs complaint with the HPD and to bring a civil suit against Martin, HPD, and one of the officers. Although the attorney filed a Tort Claims Notice, and on November 12, 2012, filed an amended complaint, the trial court dismissed plaintiff's complaint against HPD and the police officer because the notice was not timely.[2]

Plaintiff's claim against Martin proceeded to trial with a new attorney that resulted in the court's September 14, 2015 no cause judgment. According to plaintiff, she lost that trial because defendant never secured the 9-1-1 tape recordings that could have been used at the trial against Martin. As noted earlier, we vacated the no cause judgment and remanded for a new trial because of an incorrect jury charge. See Murphy II, slip op. at 17.[3]

---

[2] We have not been provided with the date that plaintiff's counsel filed the Tort Claims Notice nor have we been provided with a copy of the order dismissing the complaint against Hazlet and the police officers. Moreover, we find nothing to indicate that plaintiff ever filed an appeal from the dismissal. For our purposes we are assuming the notice was filed more than ninety days after March 11, 2011.

[3] We are unaware of the disposition of the matter after our remand.

Earlier, on February 9, 2013, plaintiff filed her complaint for legal malpractice against defendant, alleging that he breached his contract and duty owed to her by failing to file the Tort Claims Notice for claims of malicious prosecution and spoliation of evidence against Hazlet and the police officer. In response, defendant filed a Rule 4:6-2 motion to dismiss the complaint, or alternatively, for summary judgment. The motion was granted, but we later reversed in an unpublished opinion.[4] See Murphy v. Shaw, No. A-0906-13 (App. Div. Dec. 30, 2014) ("Murphy I").

After our decision, defendant filed an answer denying plaintiff's claims. During discovery, the trial court issued an order that postponed the scheduled trial to June 27, 2016, and required that expert depositions and any additional discovery be completed by June 24, 2016.

On May 12, 2016, defendant filed a motion for summary judgment and a motion to preclude the testimony of plaintiff's expert, Thomas Dorn, Esq., as a net opinion. Plaintiff served Dorn's report a few weeks earlier. In it, Dorn

---

[4] As we explained in that opinion, although the trial court "correctly observed 'that . . . the inability to file the late notice of claim . . . is the proximate cause of [plaintiff's] damage,'" he incorrectly believed that had she done so, plaintiff could have obtained court approval to file a late notice, but failed to seek that relief. For that reason, he granted defendant's motion. Murphy I, slip op at 7-8.

A-3715-16T3

expressed his opinion that defendant was negligent for not having served a Tort Claims Notice on Hazlet regarding plaintiff's claims of malicious prosecution and spoliation of evidence. Dorn stated, among other things, that had defendant served the notice, plaintiff would have succeeded on the merits of her malicious prosecution and spoliation claims against Hazlet and its officers. On June 10, 2016, the trial court denied defendant's summary judgment motion, but partially granted the motion to bar Dorn's testimony about his opinion as to whether plaintiff would have succeeded in her claims.

On June 18, 2016, plaintiff served on defendant a supplemental report by Dorn. The supplemental report added new opinions that related to plaintiff's spoliation claims about the baseball bat the police removed from plaintiff's vehicle. Upon receipt of the new report, and in anticipation of the upcoming trial date, defendant filed a motion in limine seeking to bar Dorn from testifying to its contents.

The trial did not proceed as scheduled and after multiple adjournments, it was finally scheduled for January 17, 2017. Prior to the trial's commencement, the trial court denied defendant's motion in limine regarding Dorn's supplemental report. The matter proceeded to trial before a jury.

11

During the trial, defendant moved for a directed verdict under Rule 4:37-2 both at the close of plaintiff's case and at the close of all evidence. Those motions were denied.

During the court's ensuing instructions to the jury regarding plaintiff's malicious prosecution claim, the trial court read the elements of the cause of action to the jury, adding additional explanations as it went along. When it reached the third element, it stated the following:

> Third, a plaintiff must prove that the criminal proceed[ing] terminated favorably to her in a manner not adverse to her. Well, in this case the undisputed evidence is that those . . . summonses were dismissed in the Hazlet Municipal Court after June 2, 2010. So, there[ is] not much dispute that that was a matter that was disposed of, [in] a matter not adverse to [plaintiff].

When defendant's attorney later objected to the court's instruction, the court explained that when it spoke of the underlying action terminating favorably for plaintiff, it was based upon its view that "favorably" equated with the mutual dismissals in the underlying action not being "adverse" to plaintiff.

The jury then found that defendant had not breached his contract, but was negligent and awarded plaintiff $55,000 in damages. Following the trial, plaintiff moved for costs and attorney's fees, which the court granted in an order entered on April 19, 2017. The final judgment was entered on April 26, 2017.

## II.

We begin our review by considering defendant's contention that the trial court erred in denying his summary judgment motion and his later motions for a directed verdict at both the end of plaintiff's case and the close of the presentation of the evidence.

In his summary motion, defendant argued that he represented plaintiff "only with regard to the [municipal court] summonses[.]" He also contended that plaintiff could not prove her claim for legal malpractice because she could not prove causation. In addition, he argued that plaintiff could not prove the elements of a claim for malicious prosecution, including that the underlying action did not end favorably for plaintiff. As to spoliation, defendant contended that plaintiff only alleged that the 9-1-1 tape "was never found."

In an oral decision denying defendant's motion, the trial court observed that in order for plaintiff to prevail against defendant, she had "to show that her claims of spoliation and malicious prosecution would have been viable if a [T]ort [C]laim[s] [N]otice would ha[ve] been filed." The court recognized that plaintiff could not maintain an action for malicious prosecution where probable cause for bringing the charges existed. It concluded there was a question of material fact relating to whether the HPD officers had probable cause to bring

13

charges against plaintiff. As to plaintiff's spoliation claim, it found that "the issue . . . [was] not quite so clear." The court's concern related to whether Hazlet was responsible for handling the 9-1-1 tape or another entity, such as the county, was responsible for maintaining those tape recordings.[5]

Defendant raised similar arguments at the end of plaintiff's case and at the close of the evidence in support of his Rule 4:37-2(b) motions.[6] At the end of plaintiff's case, defendant argued for a dismissal based upon plaintiff's failure to establish a claim for legal malpractice. According to defendant, the termination of the municipal court action was not in plaintiff's favor and at the time her case was dismissed, defendant was no longer her attorney. The court disagreed. It asked, "how can you get a better resolution of a criminal case th[a]n to have the charge dismissed?" It concluded that "there [was] no question about" the fact that "the [municipal court] proceeding was terminated favorably." Moreover, the trial court determined there was sufficient evidence presented for the jury to find that there was no probable cause for plaintiff being charged by the HPD

---

[5] Notably, there was no mention of the bat because plaintiff never asserted any allegations of spoliation relating to the bat in her pleadings.

[6] A different judge than the summary judgment judge presided over the trial.

police. As to spoliation, the trial court concluded that plaintiff did not need to demonstrate intentional conduct regarding the concealment of the bat or the 9-1-1 tape.[7]

At the close of evidence, defendant asserted the cause of action of malicious prosecution did not accrue while defendant represented plaintiff. Plaintiff's counsel responded by stating that under the TCA, the action accrues when the "tort[i]ous conduct happens" and if a plaintiff waited to file a notice years after the incident giving rise to the claim, he would be barred. The trial court denied the motion based on its view that there was no legal authority to support defendant's contention about when a malicious prosecution cause of action accrues.

Defendant then addressed the issue of spoliation and argued there was no evidence that the bat or the tape were destroyed. In response, plaintiff's counsel conceded that they did not know what happened to the bat removed from plaintiff's vehicle, but they were certain that the bat that was tagged in evidence was not plaintiff's bat. Also, plaintiff's counsel acknowledged that a 9-1-1 tape was produced, but he contended it was "definitely not our tape," even though he

---

[7] Evidently, as part of the motion at the close of evidence, the trial court permitted plaintiff to amend her complaint to conform to the proofs adduced at trial about the bat.

never listened to the tape. The trial court concluded the dispute was for the jury to decide and it was up to plaintiff to prove that spoliation took place, as well as the causation between the spoliation and defendant's failure to file a Tort Claims Notice.

On appeal, defendant essentially contends that the evidence presented on summary judgment and later at trial did not establish a prima facie claim for legal malpractice. We agree.

## A.

We review a court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

We review a trial court's grant of a motion for involuntary dismissal of a negligence claim pursuant to Rule 4:37-2(b) by applying the same standard as the trial court. ADS Assocs. Grp., Inc. v. Oritani Sav. Bank, 219 N.J. 496, 510

(2014). "A motion for involuntary dismissal is premised 'on the ground that upon the facts and upon the law the plaintiff has shown no right to relief.'" Ibid. (quoting R. 4:37-2(b)). "The 'motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor.'" Ibid. (quoting R. 4:37-2(b)). "If the court, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, finds that reasonable minds could differ, then the motion must be denied." Id. at 510-11 (quotations omitted). "The point is that the judicial function here is quite a mechanical one. The . . . court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969).

## B.

In determining whether defendant was entitled to judgment as a matter of law, we first consider the elements of the claim plaintiff was required to prove. See Sommers v. McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996). To establish a prima facie case of legal malpractice, a plaintiff must prove "(1) the existence of an attorney-client relationship creating a duty of care by the defendant

attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." Granata v. Broderick, 446 N.J. Super. 449, 469 (App. Div. 2016) (quoting McGrogan v. Till, 167 N.J. 414, 425 (2001)). To prove proximate causation, a plaintiff must establish that a defendant-attorney's breach of duty was a substantial factor in bringing about plaintiff's damages. Conklin v. Hannoch Weisman, 145 N.J. 395, 422 (1996). In Conklin, the Court explained that

> [t]he simplest understanding of cause in fact in attorney malpractice cases arises from the case-within-a-case concept. For example, if a lawyer misses a statute of limitations and a complaint is dismissed for that reason, a plaintiff must still establish that had the action been timely filed it would have resulted in a favorable recovery.
>
> [Id. at 417.]

i.

Turning to the first element, we look to the contents of defendant's agreement to provide services that plaintiff accepted to define their relationship at its inception.[8] RPC 1.2(c) expressly permits an attorney, with the consent of

_____

[8]  In his brief to us, defendant states that he did not specifically raise this argument before the trial court. Our review of the record is different. We understand the issue to have been raised, but even if it was not expressly argued, we agree with defendant's contention that we are free to consider it because the

the client following consultation, to limit the scope of representation. Lerner v. Laufer, 359 N.J. Super. 201, 217 (App. Div. 2003). Recognizing that "what constitutes a reasonable degree of care is not to be considered in a vacuum but with reference to the type of service the attorney undertakes to perform," we cautioned that where "the service is limited by consent, . . . the degree of care is framed by the agreed service." Ibid. (quoting Ziegelheim v. Apollo, 128 N.J. 250, 260 (1992)).

Defendant's retainer letter expressly referred only to the matter of "State v. Murphy" that was pending in municipal court. It discussed not only the action filed against plaintiff, but also mentioned the municipal court charges that defendant advised plaintiff to pursue against Martin. The retainer it requested was also limited to services performed while representing plaintiff "in Municipal Court." It made no mention of defendant having anything to do with claims against the municipality or its police officers. Under these circumstances, plaintiff's claims arising from defendant's failure to do anything related to claims

---

issues before the trial court dealt with whether plaintiff established a claim for legal malpractice based upon the accrual of her cause of action for malicious prosecution and spoliation while defendant represented her. Docteroff v. Barra Corp. of Am., Inc., 282 N.J. Super. 230, 237 (App. Div. 1995).

against either could not be sustained because he simply did not represent her in those matters.

Turning to the second element, and assuming, as plaintiff argues, her continuing communications with defendant expanded the scope of his responsibilities, plaintiff needed to establish that during the undisputed period of defendant's retention -- June 3, 2010 through September 23, 2010 -- defendant had a duty to file a Tort Claims Notice to preserve plaintiff's claim against Hazlet and the police officers. According to plaintiff, in order to do so, defendant had an obligation to file a Tort Claims Notice within ninety days of the June 2010 incident. Her contention is incorrect as a matter of law.

Under the TCA, a notice must be served "not later than the 90th day after accrual of the cause of action." N.J.S.A. 59:8-8. The TCA does not define the date a cause of action accrues. Rather, the comment to N.J.S.A. 59:8-1 states "[i]t is intended that the term accrual of a cause of action shall be defined in accordance with existing law in the private sector." Margolis & Novack, Claims Against Public Entities, 1972 Task Force Comment to N.J.S.A. 59:8-1 (2008). Consequently, the resolution of when a cause of action accrues is entirely left to judicial interpretation and administration. Rosenau v. City of New Brunswick, 51 N.J. 130, 137 (1968) (citing Fernandi v. Strully, 35 N.J. 434, 449 (1961)).

Case law has established that a cause of action accrues when the combination of facts and events exists that authorizes one party to maintain an action against another. Marini v. Wanaque, 37 N.J. Super. 32, 38 (App. Div. 1955); Band's Refuse Removal, Inc. v. Fair Lawn, 62 N.J. Super. 522, 540 (App. Div. 1960).

Generally, in personal injury actions, "[t]he date of accrual of [a] cause of action [is] the date of the accident in which [a plaintiff] knew [he or] she was injured and that a public entity was responsible." Beauchamp, 164 N.J. at 119. Additionally,

> [a] person need not have or even contemplate filing a claim in order to trigger the notice provision. It is more properly denominated as a notice of injury or loss. Although the full extent of an injury or loss may not be known, N.J.S.A. 59:8-4, the notice is triggered by the occurrence of injury and must be filed in order for a complaint to be lodged against the public entity.
>
> [Id. at 121.]

We consider therefore plaintiff's claims for malicious prosecution and spoliation of evidence to determine whether plaintiff's causes of action, if any, accrued during defendant's representation of her.

C.

In a claim for malicious prosecution, a plaintiff has the burden to establish "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." Helmy v. City of Jersey City, 178 N.J. 183, 190 (2003); see also Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 393-94 (2009). In the context of a claim for malicious prosecution based upon the pursuit of disorderly conduct charges against a plaintiff, there may be an additional element. Where the plaintiff was not subject to "arrest[], [being] held on bail, fingerprinted, photographed or suffered any of the liberty deprivations or intrusions inherently attendant upon the initiation of a criminal action," the subject of a malicious prosecution must also prove a special grievance. Klesh v. Coddington, 295 N.J. Super. 1, 4 (App. Div. 1996). "It is beyond doubt that '[t]he plaintiff must establish each element[ and that, u]pon failure to prove any one, the cause must fail.'" Brunson, 199 N.J. at 394 (alterations in original) (quoting Lind v. Schmid, 67 N.J. 255, 262 (1975)).

Here, in the context of defendant's summary judgment motion and his motions for a directed verdict, there was no dispute as to the first element, but

there remained mixed questions of law and fact as to the second and third elements. "While . . . the existence of probable cause [and actuated malice are] ordinarily . . . question[s] of law, nevertheless, [they] become[] a mixed question of law and fact when the underlying facts, as here, are in dispute[,]" and therefore require submission to the jury for resolution. Jobes v. Evangelista, 369 N.J. Super. 384, 398 (App. Div. 2004) (citing Helmy, 178 N.J. at 191; Liptak v. Rite Aid Inc., 289 N.J. Super. 199, 215 (App. Div. 1996)). We conclude that there existed a sufficient dispute of the material facts and evidence in the record to warrant the denial of summary judgment and a directed verdict to the extent defendant's motions relied upon the second and third elements. We reach a different conclusion as to the fourth element.

A cause of action for malicious prosecution does not accrue until there has been "a favorable termination of the criminal proceeding." Muller Fuel Oil Co. v. Ins. Co. of N. Am., 95 N.J. Super. 564, 577 (App. Div. 1967) (addressing the accrual for "statute of limitations [purposes and finding that it] does not begin until such termination"). "The judge must decide, after considering what occurred before the criminal court, whether the nature of such termination was . . . favorable to plaintiff. If he determines that it was not favorable, the malicious prosecution action should be dismissed; if it was favorable, that action

23

should continue." <u>Williams v. Page</u>, 160 N.J. Super. 354, 362, 364 (App. Div. 1978) (finding that, where a criminal proceeding was dismissed by reason of the defendant's insanity, the underlying criminal action "was not terminated favorably to [defendant] or not adverse to him").

Here, assuming plaintiff secured a "favorable termination" of her municipal court matter and established the other elements of her claim, it was undisputed that the charges against her were not dismissed until March 2011, months after she terminated defendant's services as her attorney. A Tort Claims Notice should have been filed no later than ninety days after the dismissal. It was also undisputed by plaintiff that during that period, she was represented by a new attorney.

Defendant therefore never had an obligation to file a notice for a malicious prosecution claim during the period he represented plaintiff because her claim had not yet ripened. Unlike a personal injury plaintiff who is injured on the day of the incident, a party who is prosecuted has no claim until when and if the prosecution is terminated in his or her favor. In this case, a dismissal did not take place while defendant was plaintiff's attorney.

Moreover, we conclude that plaintiff's claim for malicious prosecution also never ripened because although the underlying municipal court action was

24

terminated, there was no evidence that the termination was "favorable." Plaintiff's claim for malicious prosecution fails as a matter of law because the municipal case was terminated by settlement rather than by a merits-based ruling in plaintiff's favor. See Lind, 67 N.J. at 262 (citing Prosser, Law of Torts, § 119 at 835 (4th ed. 1971)). "If the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused, the termination is viewed as indecisive and insufficient to support the cause of action[, and] the accused may not later contend that the proceedings terminated in [her] favor." Mondrow v. Selwyn, 172 N.J. Super. 379, 384-85 (App. Div. 1980) (citation omitted).

Because plaintiff could never establish a bona fide claim for malicious prosecution against the municipality or its police officers, defendant was entitled to judgment as a matter of law dismissing her claim against him to the extent she relied on his failure to issue a Tort Claims Notice for that claim.

D.

Next, we consider plaintiff's claim for spoliation of evidence and reach a similar conclusion. "Spoliation typically refers to the destruction or concealment of evidence by one party to impede the ability of another party to litigate a case." Jerista v. Murray, 185 N.J. 175, 201 (2005). It involves "the

25

hiding or destroying of litigation evidence," and may be remedied "to make whole, as nearly as possible, the litigant whose cause of action has been impaired by the absence of crucial evidence; to punish the wrongdoer; and to deter others from such conduct." Rosenblit v. Zimmerman, 166 N.J. 391, 401 (2001). "[S]poliation of evidence can result in a separate tort action for fraudulent concealment, discovery sanctions, or an adverse trial inference against the party that caused the loss of evidence." Jerista, 185 N.J. at 201-02 (citing Rosenblit, 166 N.J. at 401-06).

The duty to preserve evidence arises when (1) there is pending or likely litigation and knowledge of this fact by the alleged spoliating party, (2) the evidence is relevant to litigation, and (3) the opposing party would be prejudiced by the destruction or disposal of the evidence. Aetna Life and Cas. Co. v. Imet Mason Contractors, 309 N.J. Super. 358, 366 (App. Div. 1998) (quoting Hirsch v. General Motors Corp., 266 N.J. Super. 222, 250-51 (Law Div. 1993)).

To establish a separate tort action, the plaintiff must prove the elements of a claim for fraudulent concealment of evidence. Rosenblit, 166 N.J. at 406-07. Those elements include:

> (1) That defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation;

(2) That the evidence was material to the litigation;

(3) That plaintiff could not reasonably have obtained access to the evidence from another source;

(4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation;

(5) That plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

[Ibid.]

Plaintiff argued and Dorn opined in his supplemental report that defendant's failure to have "filed a timely notice of claim against . . . Hazlet and the Officers . . . would have been sufficient to preserve any claims that [plaintiff] had against the defendants if she later found out that the (911) tapes or the 'bat' were concealed or lost" (emphasis added). They also contended that because of the divergence of plaintiff's and Martin's accounts of what happened, the tapes and the bat were "crucial evidence" to corroborate the plaintiff's version of how the accident occurred. Further, they not only asserted that not having the tapes and the bat were crucial to the municipal court case, but also to plaintiff's later civil action against Martin.

We find these contentions to be without merit. First, because the municipal court action resolved through compromise and the charges against

plaintiff were dismissed, no cause of action arose for spoliation during the period that defendant represented plaintiff. Second, the dismissal of the charges against her obviated any potential claim for spoliation because there was no longer any need or requirement for Hazlet or its officers to produce the 9-1-1 tapes or the bat in the municipal court action. Had there been a trial, and the items were not produced, plaintiff would at the very least have a claim for spoliation. Without the matter proceeding to trial, defendant had no reason to believe that evidence would not ultimately be produced.

Similarly, as to the civil action against Martin, there was no evidence that plaintiff tried to secure the bat or tape from Hazlet or the officers. If she had, and her efforts failed, she would then have had a claim for spoliation and could seek the court's assistance and pursue the remedies available to her during the trial, or she could pursue her claim after the trial for fraudulent concealment, assuming she served a timely Tort Claims Notice if appropriate.

On that note, we observe that her civil claim against Martin was remanded for a new trial and if the matter has not been otherwise resolved, plaintiff will have her opportunity to pursue her spoliation claims when and if the evidence she seeks is not produced and she can establish the other elements of the claim. What is clear to us is that in this case, plaintiff failed to establish the other

elements of the claim on summary judgment and during trial. Plaintiff did not come forward with any evidence that either the tape's or the bat's concealment was the result of the HPD "intentionally with[holding], alter[ing] or destroy[ing] the evidence with purpose to disrupt the litigation." Rosenblit, 166 N.J. at 407.

Similarly, other than plaintiff's bald assertion, there is no proof that she would have prevailed at trial against Martin had the bat or tapes been produced. A "[p]laintiff['s] unsupported allegation that the absence of . . . physical evidence may have caused [the jury to return a no cause verdict] is pure speculation." Marinelli v. Mitts & Merrill, 303 N.J. Super. 61, 75 (App. Div. 1997). Without proof of each element, plaintiff could not have succeeded on her claim even if a notice had been served.

Because we conclude that summary judgment or a directed verdict should have been entered in defendant's favor, we need not reach any of his remaining arguments. The Law Division's final judgment is reversed and the matter is remanded for entry of an order vacating the judgment and entering a directed verdict in favor of defendant.

Reversed and remanded for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3715-16T3